Richmond

## Charles C. Ware, Et Al.

## v.

## Larry B. Scott, Et Al.

August 30, 1979.

Record No. 771734.

Present: All the Justices.

318

*Sarah H. Ludwig (David B. Hart; Smeltzer & Hart, P.C.,* on briefs), for appellants.

*Charles O. Cornelison; John B. Weld (Copenhaver, Ellett and Cornelison,* on brief), for appellees.

POFF, J., delivered the opinion of the Court.

This is an appeal by the sellers of a house from a judgment awarding the buyers damages for fraudulent inducement. We decide whether the sellers are liable for damages resulting from their failure to disclose certain information, material to the contract of sale, acquired by them after the contract document was signed but before the sale was consummated.

We view the facts in the light most favorable to the buyers who prevailed below. Charles C. Ware and Iona A. Ware, his wife, listed their house for sale with a realtor. In early April 1973, Paige B. Scott, wife of Larry B. Scott, inspected the house and inquired whether "there had ever been any water problems". Mrs. Ware replied, "The only water we've had is some seepage around the chimney, but it has been repaired." She neglected to mention the fact that, in June 1972, storm water from an overflowing drainpipe at the rear of the lot had overturned a stone wall along one side of the property. Visiting the house later, Mr. Scott made a similar inquiry and was told by the Wares' daughter that he would have to talk with her parents. Advised by his wife that she had received satisfactory assurances on that score, Mr. Scott did not pursue the matter further. The parties signed a contract of sale April 23, 1973. Settlement, scheduled for May 30 but postponed at the Wares' request, was consummated July 1, and the Scotts took possession July 4.

When the Scotts moved in, there was "a ditch down the front yard"

and the rock wall was damaged, but there was no visible damage to the house. The Scotts found a note signed by Mrs. Ware stating that there had been a "water problem" but that the wall and yard would be restored by Charles R. Simpson, Sr., the man who had constructed the house and drainage system. The damages were repaired, and the Scotts experienced no water problem until a year later.

On July 26, 1974, and again on August 23, 1974, the Scotts' house was flooded by water overflowing the drainpipe. They enlisted the aid of the fire department to pump out the water. The fire chief told the Scotts that he had been called to the same address for the same purpose a year earlier when water overflowing the drainpipe had damaged the stone wall and flooded the house.

Alleging fraudulent inducement, the Scotts filed a motion for judgment against the Wares claiming $4,784 for "damage to the structure and the furnishings of the residence". At trial, the evidence showed that the flood to which the fire chief referred had occurred May 23, 1973; that the Wares told their realtor what had happened; that the realtor, believing that Simpson would repair the damage, told the Wares "to forget about it"; that the Scotts agreed to postpone the closing because they had been told that the apartment into which the Wares were moving had not been completed; that the Scotts, who had not returned to the house before the closing and had found no damage to the house when they took possession, were unaware that the house had been flooded until they learned about it from the fire chief a year later; and that the Scotts would not have purchased the house had they known it was subject to flooding.

Sitting without a jury, the trial judge found that Mrs. Ware's statement to Mrs. Scott did not amount to an intentional misrepresentation but that the Wares' concealment of the May 23 flood and its consequences was fraudulent. Upon this finding the Scotts were awarded damages in the sum of $2,507.20.

■ The Wares argue that the May 23 flood "occurred *after* the contract for the sale of the house was signed; so the failure to reveal it could not possibly have been for the purpose of procuring the contract." It is true that, even though fraudulent, a misrepresentation made subsequent to, or a concealment of a fact arising after, *formation* of a contract cannot constitute fraudulent inducement to enter into the contract; the misrepresentation or concealment must have been intended to induce and must, in fact, have induced the formation of the contract. *Brame* v. *Guarantee Finance Company*, 139 Va. 394, 408, 124 S.E. 477, 481 (1924); *Max Meadows Land and Improvement Co.* v. *Brady*, 92 Va. 71, 77, 22 S.E., 845, 847 (1895); Restatement

(Second) of Torts § 525 (1977).

An action for fraudulent inducement need not, however, be limited to formation of the contract. Although formation was free of fraud, *performance* of an executory contract may be fraudulently induced. Such is the case when one party fraudulently leads the other to believe that a condition precedent to the latter's duty to perform has been fulfilled. *See, e.g., Horner* v. *Ahern,* 207 Va. 860, 153 S.E.2d 216 (1967). By the same logic, fraudulent inducement to perform may arise when one party induces the other to perform by concealing some fact which excuses performance by the latter. For example, under certain circumstances performance may be excused because the contract was formed under a mutual mistake of material fact. *Ice Company* v. *Lee,* 199 Va. 243, 99 S.E.2d 721 (1957); *Briggs* v. *Watkins,* 112 Va. 14, 70 S.E. 551 (1911); *Chamberlaine* v. *Marsh's Administrator,* 20 Va. (6 Munf.) 283 (1819); *cf. Nationwide Mutual Ins. Co.* v. *Muncy,* 217 Va. 916, 234 S.E.2d 70 (1977) (recognizing the doctrine but upholding a contract).

■ The Scotts' action for damages for fraudulent inducement was based on Mrs. Ware's statement to Mrs. Scott prior to formation of the contract[1] and on the Wares' failure to notify them of the May 23 flood and its consequences before they went to settlement. Without deciding whether Mrs. Ware's statement constituted an actionable inducement to formation of the contract,[2] we believe that the evidence shows that the performance of the contract was fraudulently induced.

Contrary to the import of Mrs. Ware's statement, the house was subject to damage by flooding. Her statement, though not intended to defraud, was erroneous. Thus, the parties entered into the contract of sale under a mutual mistake of fact material to its formation and performance. This mistake made the contract voidable at the option of the Scotts.

When a vendor in an executory contract for the sale of realty acquires information after the formation of the contract, but before time for performance, and such post-contractual information negates a pre-contractual representation of a fact material to the sale and reveals that the contract was formed under a mutual mistake as to

---

[1] Viewing the trial court's letter opinion as a whole, we construe the finding that the statement was not a "material misrepresentation" as a finding only that the statement was not made with an intent to defraud.

[2] A material misrepresentation, though innocent, may be an actionable inducement to the formation of a contract. *See, e.g., B-W Acceptance Corp.* v. *Benjamin T. Crump Co., Inc.,* 199 Va. 312, 99 S.E.2d 606 (1957); *Union Trust Corp.* v. *Fugate,* 172 Va. 82, 200 S.E. 624 (1939).

such fact, the vendor is under a duty to disclose that information to the vendee.[3] When the breach of that duty induces the vendee to perform a voidable covenant to purchase, the breach constitutes fraudulent inducement to perform, and the vendee may recover damages resulting from such fraud.

█ Here, the Wares acquired such information before the date scheduled for performance, persuaded the Scotts to postpone the date, and, in the meantime, repaired the damage to the house so the Scotts could not discover the mutual mistake of fact. We hold that the Wares' failure to disclose constituted fraudulent inducement to perform and that the Scotts are entitled to damages resulting therefrom. Finding no error below, we will affirm the judgment.

*Affirmed.*

---

[3] Restatement (Second) of Torts § 551 (1977) provides:

"(1) One who fails to disclose to another a fact that he knows may justifiably induce the other to act or refrain from acting in a business transaction is subject to the same liability to the other as though he had represented the non-existence of the matter that he has failed to disclose, if, but only if, he is under a duty to the other to exercise reasonable care to disclose the matter in question.

"(2) One party to a business transaction is under a duty to exercise reasonable care to disclose to the other before the transaction is consummated,

. . . .

(c) subsequently acquired information that he knows will make untrue or misleading a previous representation that when made was true or believed to be so".