## CIRCUIT COURT OF LEE COUNTY

Golden Imagean Hamlin et al.

v.

Robert V. Littrell and
Margie Littrell

August 15, 1984

Case No. 2437

By JUDGE S. W. COLEMAN, III

This chancery proceeding seeks to rescind a deed of conveyance to certain lots in the Rose Hill Magisterial District of Lee County from R. V. and Margie Littrell to Golden Imagean Hamlin and Tommy L. Hamlin in April of 1979. The grounds for seeking such relief are that the grantors misrepresented material facts to the grantees which were relied upon by them concerning the suitability of the lots to maintain a septic system and further concealed from the grantees facts known to the grantors concerning the septic system.

The pertinent facts are that Robert V. and Margie Littrell purchased the eight lots in question in about 1973 or 1974. (Tr. p. 40). The lots fronted other lots on which the Littrells later constructed their residence in 1975 and lay between their residence and the highway. According to R. V. Littrell his plans in 1974 were to build two houses on the lots in question. (Tr. p. 49). On September 5, 1974, R. V. Littrell received a rejection notice from the Lee County Health Department that the lots were not suitable for a septic tank system because of rock and insufficient soil. The Littrells did not undertake to build any houses or install a septic system. At some point later the Littrells placed a "for sale" sign on

the property and R. V. Littrell undertook negotiations with a Mr. Smith who was interested in purchasing the lots in order to erect a butcher shop. It is not clear from the record whether these negotiations were in 1977 or around Easter of 1979, but apparently the latter. Nevertheless, Mr. R. C. Elkins of the Lee County Health Department again examined the property along with three other Health Department officials and on May 22, 1979, issued another rejection to R. V. Littrell for a septic tank system noting that the soil was from 0-18" in small areas and that the highway bank indicated that the rock was of considerable depth. (Elkins Exhibit # 1 - Rejection). R. V. Littrell testified that during this time he had discussions with Health Department officials that if he went ahead and installed a septic tank system, even though there had been a rejection, that no questions would be raised and that ultimately the Health Department would take no action to reject the system. The negotiations for the sale to Mr. Smith for the butcher shop were never consummated and negotiations began with the complainant, Golden Hamlin, who desired to construct a residence on the property. Golden Hamlin testified that Mr. Littrell specifically represented to her that a septic tank system could be placed on the property and even indicated to her on the ground where the field lines would have to be placed as specified by the Health Department. She stated that she observed a hole on the property which Littrell indicated "that a man had started to put a septic system in, and said he and his wife divorced and said that the Health Department, said the man was going to put a butcher shop in there and said he and his wife divorced or separated and said the Health Department decided that it would take too much water to wash meat with and that it was zoned residential and residential only." (Tr. pp. 6-7). Mrs. Hamlin testified that she inquired on more than one occasion whether there were any restrictions on the property, to which Littrell responded only those in the deeds. Hamlin stated that she was never notified of the rejection notice. R. V. Littrell acknowledged that he did not specifically inform Mrs. Hamlin of the written rejection, stating that he had forgotten that a written notice had been received until a dispute arose and his wife acknowledged to him that the rejec-

tion had been received. (Tr. p. 53). Mr. Littrell indicates that he stated to Mrs. Hamlin, "I said while we're on the matter of restrictions, I said now it's been turned down for a cesspool and if you get a cesspool, if you buy them (lots) and get a cesspool, you'll have to put the cesspool in first and then call the Health Department and Mr. Elkins will come back and pass it, is what he told me." (Tr. pp. 45-46). Mr. Littrell further stated that the last discussion he had with Mrs. Hamlin after the deed was signed was when they rode back upon the property, at which time he advised Mrs. Hamlin in response to her inquiry as to how the cesspool should be installed by pointing out to her on the ground the location in accordance with the suggestion of Mr. Elkins from the Health Department. (Tr. p. 46). In response to the inquiry of whether he undertook to withhold information from or deceive Mrs. Hamlin, Littrell responded, "no, none whatsoever. I didn't even have to tell her about it being turned down but I took it on my own and told her because Elkins said in order for me to get a cesspool on there, I would have to put it in and call him, that he'd come back and pass it, that he would not issue a permit." (Tr. p. 46-47).

Following the sale, Mrs. Hamlin undertook to contract for the installation of a septic tank system. After the contractor instructed her to first contact the Health Department, she learned of the written rejection notice which had been issued to R. V. Littrell in 1974 and 1979 and was told that she could not install a septic tank. She immediately lodged a complaint with the Littrells, demanding a return of her money, which was rejected and resulted in this litigation.

It is firmly established as part of the common law of Virginia that in the sale of real estate the doctrine of *caveat emptor* applies. *Kuczmanski* v. *Gill*, 225 Va. 367 (1983).

> Where ordinary care and prudence are sufficient for full protection, it is the duty of the party to make use of them. Therefore, if false representations are made regarding matters of fact, and the means of knowledge are at hand and *equally* available to both parties, and the party, instead of resorting to them,

sees fit to trust himself in the hands of one whose interest it is to mislead him, the law, in general, will leave him where he has been placed by his own imprudent confidence.

*Horner* v. *Ahern*, 207 Va. 860, 863-64, 153 S.E.2d 216, 219 (1967).

There are several well-established exceptions to the doctrine of *caveat emptor* in Virginia, thus, unless the facts of the case at bar come within these exceptions, the complainants cannot prevail and must accept that for which they bargained. Misrepresentation of a material fact relied upon by the parties or concealment of material fact after inquiry is made which may divert one from taking the care and prudence that would have otherwise been exercised are within the established exceptions. *Horner* v. *Ahern*, *supra* and *Ware* v. *Scott*, 220 Va. 317, 257 S.E.2d 855 (1979). However, mere expressions of opinion, "puffing" or sales talk or general expressions of suitability upon which the parties cannot reasonably rely are insufficient to constitute misrepresentation or concealment. *Poe* v. *Voss*, 196 Va. 821, 86 S.E.2d 47 (1955).

The case at bar bears striking similarities to the facts in *Armentrout* v. *French*, 220 Va. 458, 258 S.E.2d 519 (1979), and, to some extent, *Ware* v. *Scott, supra*. In *Armentrout* the purchasers of a house were told by the realtor that the septic tank had recently been pumped, alerting the purchasers to further inquire about the septic system. The realtor assured the perspective purchasers that the system "checked fine" and no further inquiry or inspection was made. In fact, the system was defective and several steps had been taken by the sellers to actually conceal the defects. By contrast, in the case at bar, the Littrells had taken no steps to affirmatively conceal the condition of the property. However, the Littrells were fully aware that the property was being purchased for construction of a residence and that it could not support or be approved for a septic tank system. Mrs. Hamlin specifically inquired about a septic system and was given assurance by Mr. Littrell that one could be installed even though he knew that he had received two rejection notices and was himself not permitted to install a system. While Littrell suggests that he made a full disclosure

of the facts and circumstances of the rejection to Mrs. Hamlin, the evidence is in conflict on this point. For numerous reasons, the court resolves the conflict in evidence in favor of the complainants. On a matter of such importance to the construction of a residence, common sense dictates that Mrs. Hamlin who was so concerned about a septic tank system would not have completed the sale without assurance that a system would be installed. Both parties acknowledged that R. V. Littrell described on the ground how a system could be placed. Littrell's telling Mrs. Hamlin that a system for a butcher shop which would use a large quantity of water could not be approved, appears to have been designed to mislead the purchaser into believing that a septic system for a residence could be approved. The seller further represented to her that she could install a system despite Health Department regulations and then have the system approved. Even after inquiry had been made by Mrs. Hamlin, Littrell never made mention that he had twice received written rejection from the Health Department for the type system to be installed. Not only were material facts concealed from Mrs. Hamlin after she made inquiry, representations and assurances were given which diverted her from taking the care and precautions necessary to determine the true condition of a situation which was not evident from a mere inspection. Once the inquiry about the septic system was made, the seller "must not say or do anything to throw the purchaser off his guard or to divert him from making the inquiries and examinations which a prudent man ought to make." *Armentrout v. French, supra* at p. 466. The defendants failed to adhere to this responsibility which fairness and the law impose upon them.

In the *Ware* case, the purchasers specifically inquired whether the house had water problems and were assured that it did not. In fact, the house had experienced drainage problems which had caused damage before and also during negotiations but before closing of the sale. The court held that since the purchasers had made specific inquiries about the condition, and had been misled or the truth concealed from them, that performance of the contract had been induced by fraud. While the case at bar has many distinguishing features, the rationale and legal principles are equally applicable to the case at bar.

Accordingly, for the reasons stated, the complainants' prayer for rescission shall be granted. Counsel for the complainants shall prepare a decree in accordance with the court's findings of fact and law requiring reconveyance of the lots to the original grantors and a refund of the purchase price to the complainants.