**HOOVER UNIVERSAL, INC.,** Appellant,

v.

**BROCKWAY IMCO, INC., Appellee.**

**HOOVER UNIVERSAL, INC., Appellee,**

v.

**BROCKWAY, IMCO, INC., Appellant.**

Nos. 86–1043, 86–1065.

United States Court of Appeals, Fourth Circuit.

Argued Oct. 6, 1986.

Decided Jan. 21, 1987.

David M. Hayes, Detroit, Mich. (M. Diane Vogt, Clark, Klein & Beaumont, John C. Moore, Coates & Comess, Richmond, Va., on brief) for appellant/cross appellee.

Robert M. Rolfe, Richmond, Va. (Jessica Sanders Jones, Hunton & Williams, on brief) for appellee/cross appellant.

Before HALL, Circuit Judge, HAYNSWORTH, Senior Circuit Judge, and CLARKE, United States District Judge for the Eastern District of Virginia, sitting by designation.

K.K. HALL, Circuit Judge:

In this consolidated appeal and cross-appeal, Hoover Universal, Inc. ("Hoover"), a Michigan corporation, appeals from an order of the district court granting summary judgment in favor of Brockway Imco, Inc. ("Imco"), in a diversity action alleging breach of warranty and fraud arising from the sale of certain pieces of industrial equipment. Imco, a Delaware corporation doing business in the state of Virginia, cross-appeals the denial of its motion seeking the imposition of sanctions against Hoover pursuant to Fed.R.Civ.P. 11. We

affirm, although for reasons different from those expressed by the district court.

## I.

In 1983, Imco decided to sell a process for manufacturing plastic bottles known as the ORB VI, which it had earlier developed and patented. In May of that year, executive personnel from Hoover's Plastic Bottle Division expressed an interest in acquiring the ORB VI. They arranged to meet with Imco representatives at Imco's Kansas City, Missouri, facility where three fully assembled machines were located.

At the May 4, 1983, meeting, John Cannaday, Imco's Director of Process Equipment Development provided the Hoover representatives with a prepared handout which purported to summarize certain technical data in connection with the ORB VI operation. Unbeknownst to both Hoover and Imco, the handout contained an error with regard to the number of bottles that could be produced on a machine per cycle. This attribute of the ORB VI, known as cavitation capacity, was overstated in the handout.[1]

Following the May 4th meeting, Samuel J. Rupert, one of Hoover's representatives, prepared a trip report which was circulated among various people in the Hoover organization. A copy of the May 4th handout was attached to the report. The trip report circulated on May 9, 1983, was the last specific mention of the handout in the dealings between Hoover and Imco.

On June 3, 1983, Imco provided, at Rupert's request, certain financial and technical data relating to the ORB VI process. The documents produced included (1) a profit and loss statement; (2) a statement of plant manufacturing costs; (3) a statement of manufacturing manpower; (4) a production data sheet; and (5) balance sheet information as of December 31, 1982, and April 30, 1983. No error has been asserted with regard to these documents which were subsequently incorporated into the written sales contract signed by Hoover and Imco.

Hoover representatives again visited the Kansas City facility on June 14, 1983. During this meeting, Rupert was shown drawers of machine drawings relating to the ORB VI. Hoover subsequently admitted that if either the drawings or the machines themselves had been closely inspected, the error in the handout would have been discovered. Rupert, however, voluntarily limited his inspection of the drawings to a determination of whether they were current.

Following the preliminary contacts, the parties entered into actual negotiations. In June of 1983, E. Elmer Sivacek, Hoover's primary negotiator, and Frank J. Oelerich, Jr., the President of Imco, tentatively agreed on a sale of the ORB VI for a purchase price of $3.5 million payable in cash and trade credits.

The preliminary agreement was subsequently memorialized in a lengthy written contract designated as an Asset Purchase Agreement. The actual contract language emerged from negotiations conducted between in-house counsels for Hoover and Imco. The Agreement contained two provisions of particular relevance to this appeal. In paragraph 2(d), the parties agreed that:

Since Hoover has reviewed the Business and will inspect the Purchased Assets and become familiar with and satisfy itself concerning the same, with the exception of the specific representations and warranties set forth in Paragraph 10 hereinafter, IMCO MAKES NO REPRESENTATION OR WARRANTY TO HOOVER WITH RESPECT TO THE FINANCIAL CONDITION OR PROSPECTS OF THE BUSINESS, OR THE MERCHANTABILITY, CONDITION OR WORKMANSHIP OF THE PURCHASED ASSETS OR ANY PART THEREOF, THE SUITABILITY OR FITNESS OF THE PURCHASED ASSETS OR ANY PART THEREOF FOR HOOVER'S PURPOSES, THE AB-

---

1. The handout indicated a cavitation capacity of seven, six or five depending upon the diameter of bottles produced. The actual capacity was one less bottle per cycle in all three categories.

SENCE OF ANY DEFECTS THEREIN, WHETHER LATENT OR PATENT, THE REGISTRABILITY OF ANY TRADEMARK, ENFORCEABILITY OF ANY CONTRACT, OR VALIDITY OR ENFORCEABILITY OF ANY PATENTS OR TRADEMARK REGISTRATION INCLUDED IN THE PURCHASED ASSETS. Subject to the said specific representations and warranties set forth in paragraph 10, the Purchased Assets are being sold "AS IS" and where located, with relocation and transfer thereof to be handled in accordance with paragraph 12 hereinafter. Hoover shall be responsible, and assumes all risk and liability, for the consequences of its purchase, ownership, use and possession of the Purchased Assets and the conduct of the Business after closing by or on behalf of Hoover.

The Agreement also contained a merger clause of paragraph 23 stating that:

This Agreement represents the entire understanding and agreement between the parties hereto with respect to the subject matter here and cannot be amended, supplemented or changed, nor can any provision hereof be waived, except by written instrument signed by the party against whom enforcement of any such amendment, supplement, modification or waiver is sought.

At no place in the contract was any reference made to the cavitation capacity of the ORB VI.

The Asset Purchase Agreement was signed by Hoover in Michigan and Imco in Virginia in August of 1983. Pursuant to the contract, three completed ORB VI machines and the component parts of eight additional machines were shipped to Hoover's plants. In the spring of 1984, Hoover's Machinery Division in Manchester, Michigan, began assembling the eight machines. At that point the error in the cavitation capacity was discovered.

On September 24, 1984, Hoover filed a complaint in the United States District Court for the Eastern District of Michigan, alleging that the May 4, 1983, handout had created an express warranty which Imco had breached. Alternatively, Hoover alleged that Imco's use of the handout constituted fraud. The action was subsequently transferred to the District Court for the Eastern District of Virginia, where the court granted summary judgment in favor of Imco on January 7, 1986. The district court concluded that the comprehensive nature of the written agreement barred both Hoover's claims of breach of warranty and of fraud.

Imco, thereafter, moved for the imposition of sanctions against Hoover pursuant to Rule 11 of the Federal Rules of Civil Procedure. Imco argued that Hoover could not have reasonably certified that its claims were formed after reasonable inquiry and were well-grounded in fact and warranted by law, as required by Rule 11. The district court concluded, however, that existing law had given Hoover "a glimmer of a chance" to prevail. The court determined, therefore, that sanctions were inappropriate.

This appeal and cross-appeal followed.

## II.

Under the Virginia Uniform Commercial Code § 8.2–313 express warranties by the seller are created by:

(a) Any affirmation of fact or promise made by the seller to the buyer which relates to the goods *and becomes part of the basis of the bargain* ... or by

(b) Any description of the goods *which is made part of the basis of the bargain* ....

(emphasis added).

On appeal, Hoover argues that Imco's handout constituted both an affirmation of fact relating to the goods and a description of those goods. It further contends that the question of whether the information in the handout became "part of the basis of the bargain" was a question for the jury's determination. Finally, Hoover insists that the jury was entitled to consider whether it was trade practice for sellers of machinery

to provide technical information and for buyers to rely upon that information.

■ Assuming for the purposes of decision that Imco's handout was either an affirmation of fact or a description of the goods, it does not follow that summary judgment was improperly granted. As the district court implicitly recognized, any effort by Hoover to prove that the handout was part of the basis of the bargain would have inevitably foundered on the barrier raised by the existence of a detailed written contract. The parol evidence Rule, as codified in the Code of Virginia § 8.2–202, states that:

> Terms with respect to which the confirmatory memoranda of the parties agree or which are otherwise set forth in a writing intended by the parties as a final expression of their agreement with respect to such terms as are included therein may not be contradicted by evidence of any prior agreement or of a contemporaneous oral agreement but may be explained or supplemented
>
> (a) by course of dealing or usage of trade (§ 8.1–205); ... and
>
> (b) by evidence of consistent additional terms *unless the court finds the writing to have been intended also as a complete and exclusive statement of the terms of the agreement.* (emphasis added)

The district court did not explicitly apply the language of § 8.2–202(b). Its reference, however, to a "merged contract" and to the fact that any liability would have to be discovered "within the four corners of the instrument" leave no doubt that the court found the Asset Purchase Agreement to be a "complete and exclusive statement" of the agreement between Hoover and Imco. In light of the detailed nature of the contract, including the well-drafted merger clause, we can see no error in that conclusion.

It follows, therefore, that § 8.2–202 precludes any effort by Hoover to establish through the handout a warranty relating to the ORB VI cavitation capacity even in the unlikely eventuality that the warranty could be construed as a consistent additional term. Moreover, as the district court properly recognized, a jury question could not be created through evidence of trade usage. It is readily apparent that Hoover intended to introduce trade usage not to explain or supplement the meaning of a contract term, but rather to contradict the limitation of warranties contained in Paragraph 2(d) of the Asset Sales Agreement. Because such action would have clearly violated the statute and because Hoover had no other means of proving its warranty claim, summary judgment was properly granted on the issue.

### III.

The district court's decision to grant summary judgment on Hoover's allegations of fraudulent inducement presents a somewhat more troubling question. Hoover argues that the cavitation capacity described in the handout was a substantial motivating factor in its decision to buy the ORB VI. Its detrimental reliance on that misrepresentation established, in Hoover's view, a prima facie case of either actual or constructive fraud.

The district court stated that Hoover's attempt to "end run" around the contract was precluded by the reasoning in *Towner v. Lucas*, 54 Va. (13 Gratt.) 705 (1857). In *Towner*, a debtor obligated under the terms of a written note attempted to claim that a prior oral promise had been made that he would not be required to pay the note. The Virginia Supreme Court held that evidence of the alleged promise could not be received because to do so would "weaken the confidence in all securities for debts." 54 Va. (13 Gratt. at 724). Applying *Towner*, the district court concluded that Hoover's allegation of fraud constituted a similar impermissible effort to assert a promise in contradiction of the general disclaimer language of the contract.

We believe that the district court may have read *Towner* too broadly. In this instance, Hoover alleged a prior statement by Imco relating to a specific characteristic

of the ORB VI. The contract did not address that characteristic at all. There was, therefore, no direct term-for-term contradiction between the prior statement and the written agreement. The threat to the integrity of written agreements perceived by the court in *Towner* was not present. Absent any other significant factors, Hoover would have been permitted to introduce evidence relating to the existence of a fraudulent promise.

 Even if *Towner* is disregarded, however, we conclude that summary judgment was still properly granted on the fraud claim. Under Virginia law, a seller who misrepresents a material fact in connection with a sale may be liable for fraud in the inducement. However, in circumstances where a prudent buyer would have conducted an investigation and, thereby, discovered the seller's misstatement, a buyer who fails to make such an investigation may not assert fraud based on the factual misrepresentation. A buyer who fails to conduct a proper investigation may still recover if the seller's conduct intentionally diverts the buyer from engaging in a reasonable inquiry. *See e.g., Armentrout v. French*, 220 Va. 458, 258 S.E.2d 519 (1979).

As the district court recognized in its opinion, Hoover not only should have made a prudent investigation, it expressly agreed in paragraph 2(d) of the contract that it would "inspect" and "become familiar" with the ORB VI. It is undisputed that a timely investigation would have revealed the error in the handout. Furthermore, Hoover alleged no conduct by Imco that could reasonably be construed as an effort to forestall further inquiry by Hoover.

Hoover's clear failure to fulfill the duty of inspection imposed by both the operation of law and contract precludes its effort to assert reliance on Imco's prior statement. The district court did not err, therefore, in granting summary judgment on the claim of fraud.

### IV.

Turning to Imco's cross-appeal from the denial of its motion for sanctions against Hoover pursuant to Fed.R.Civ.P. 11, we find no error in the district court's ruling. Contrary to Imco's argument on appeal, we see no indication that the district court improperly applied a subjective standard of good faith rather than an objective test of reasonableness to a determination of whether Hoover's action was "warranted by existing law." Indeed, the court expressly stated that "[o]bjectively ... [Hoover had] a glimmer of a chance of prevailing." In a case turning upon such general concepts as "basis of the bargain" and "reasonable reliance" we cannot disagree with that conclusion.

### V.

For the foregoing reasons, we affirm the judgment of the district court.

AFFIRMED.