## CIRCUIT COURT OF THE CITY OF RICHMOND

Sovran Mortgage Corp.

v.

Figgie International, Inc., et al.

June 30, 1989

Case No. LM-3217-4

By JUDGE RANDALL G. JOHNSON

This case arises out of two loan applications submitted to plaintiff, Sovran Mortgage Corporation, by defendants, Figgie International, Inc., Figgie Properties, Inc., and Interstate Electronics Corporation (collectively "Figgie"). Sovran alleges that based upon those loan applications, it negotiated on Figgie's behalf two loan commitments, one for $25,000,000, and one for $10,000,000, which Sovran alleges were acceptable to Figgie as shown by Figgie's signature and agreement to the commitments. Sovran further alleges that in spite of its success in obtaining the loan commitments and in taking other actions pursuant to the loan applications, Figgie refused to close the loans.

As originally filed, Sovran's motion for judgment alleged breach of contract (express and implied), breach of fiduciary duty, and fraud and misrepresentation. By order entered March 27, 1989, the court sustained Figgie's demurrer to the counts alleging breach of fiduciary duty and fraud and misrepresentation, but granted plaintiff leave to amend those counts. An amended motion for judgment amending the fraud count has now been filed, to which Figgie has again demurred.

The amended motion for judgment alleges that throughout the discussions leading up to the execution of the loan applications, Figgie "either intentionally or negligently concealed from Sovran Figgie's intention, if it was in its best interests, to raise the $35,000,000 it needed by the alternative means of a stock offering, which Figgie was under a duty to disclose." In addition, Sovran alleges that after the applications and agreements were signed, and after Figgie had decided to raise the $35,000,000 through a stock offering, it still did not disclose that fact to Sovran, again in violation of Figgie's "duty to disclose." In other words, it is Sovran's position that regardless of its failure to question Figgie about Figgie's plans for alternative financing, and regardless of any provisions contained, or not contained, in the loan applications and agreements, Figgie had an affirmative duty to initially tell Sovran that alternative financing might be pursued, and to subsequently tell Sovran that such alternative financing had been obtained. More importantly, Sovran argues that Figgie's failure to make such disclosures not only constitutes a breach of contract, but actionable fraud.

The parties have filed rather detailed memoranda in which they argue whether Figgie's nondisclosures were of a past or presently existing fact, or of a future possibility, or concerned anything upon which Sovran had a right to rely, and so on. The court, however, believes that the real issue is simply whether an applicant for credit commits actionable fraud by not telling a potential creditor or credit broker, in the absence of inquiry, that he may pursue, or in fact is pursuing, other means of financing which would eliminate the need to consummate the loan for which the subject application is being made; or, after a credit application is signed, by not telling the potential creditor or credit broker that such other financing has been obtained. I think not.

When a party applies for credit, whether it be a corporation such as Figgie seeking $35,000,000, or a wage earner seeking to buy a kitchen table, he deals at arms length with his potential creditor or credit broker. If the creditor or broker wishes, the applicant may be required to fill out an application. He may also be required, as part of his application, to agree to pay an application

fee and other costs associated with the application. Moreover, a provision in the application may call for the payment of a specified amount if credit is approved and the applicant decides not to accept the loan. In short, in the absence of federal or state law to the contrary, the parties to the application may agree to any terms they wish. The court has been directed to no law, however, and I have been unable to locate any, which places upon a credit applicant the affirmative duties sought to be placed upon Figgie here. Indeed, to hold as Sovran suggests would be to place upon every consumer the duty to tell potential creditors that he or she is contemplating alternative financing and may not accept the loan even if it is approved. For example, a person who applies for a car loan with a dealer would commit fraud if he also applies for a similar loan with his bank in order to get the lowest interest rate, unless he tells the dealer and the bank about the other application. Similarly, a student who applies for an education loan, and who knows that he will not need or accept such loan if the scholarship for which he has also applied is granted, will be guilty of fraud unless he discloses to the potential creditor the fact of his scholarship application. Indeed, the logical extension of Sovran's argument would require a person applying for a home mortgage who purchases a chance in a million dollar lottery, knowing that if he wins the lottery he will pay cash for his home, to disclose to the potential lender the fact of his participation in the lottery; otherwise, he is guilty of fraud. While an applicant's failure to make such disclosures might violate some specific provision in a loan application, and while the lender or broker might have a claim for breach of contract if an applicant refuses to consummate an approved loan, this court is unwilling to hold that a credit applicant, in the absence of inquiry, commits fraud by failing to tell potential creditors that the applied-for loan may not be accepted, either at the time of application or afterwards.

The cases cited by Sovran in support of its position are unpersuasive. *Allen Realty Corp. v. Holbert*, 227 Va. 441, 318 S.E.2d 592 (1984), involved a fiduciary's concealment of offers to purchase real estate from his client.

Here, there is no allegation -- nor could there reasonably be one -- that Figgie owed any fiduciary duty to Sovran.

In *Ware v. Scott*, 220 Va. 317, 257 S.E.2d 855 (1979), the purchasers of a home sued the sellers for fraudulently inducing the purchase. In that case, however, the purchasers had specifically asked the sellers whether "there had ever been any water problems" in the house. 220 Va. at 318. The sellers responded that the only problems had been "some seepage around the chimney, but it has been repaired." They neglected to mention that less than a year earlier, storm water from an overflowing drainpipe at the rear of the lot had overturned a stone wall along one side of the property. *Id.* Citing Restatement (Second) of Torts, Section 551 (1977), the Supreme Court held that the sellers had an affirmative duty to disclose the water problem, and that such duty was breached by the sellers' nondisclosure. That case is completely different from the case at bar where no inquiry about other financing was made, and where no law has been cited which imposes the duties which Sovran seeks to impose.

Finally, Sovran cites *FLIP Mortgage Corporation v. McElhone*, 841 F.2d 531 (4th Cir. 1988), which held that "fraud can be found in a breach of contract if the defendant did not intend to perform at the time of contracting," 841 F.2d at 537 *(citing Colonial Ford Truck Sales v. Schneider*, 228 Va. 671, 325 S.E.2d 91 (1985)), and that the submission of false revenue reports to a creditor may also constitute fraud. *Id.* In the case at bar, there is no allegation that Figgie did not intend to perform its contract with Sovran when the loan applications and agreements were signed. Instead, the amended motion for judgment simply states that Figgie knew that it "might be preferable" to obtain the money elsewhere. There is also no allegation that Figgie submitted any false reports to Sovran after the decision to sell stock was made, only that no disclosure was made. Having found no duty to make such disclosure, fraud is not present.

For the foregoing reasons, Figgie's demurrer to Count IV of the amended motion for judgment is sustained.