7 F.3d 222
 24 UCC Rep.Serv.2d 440
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
AGRI-TECH, INCORPORATED, Plaintiff-Appellee,
v.
BREWSTER HEIGHTS PACKING, INCORPORATED, Defendant-Appellant.
Agri-Tech, Incorporated, Plaintiff-Appellant,
v.
Brewster Heights Packing, Incorporated, Defendant-Appellee.
 Nos. 92-2007, 92-2011.
 United States Court of Appeals,
Fourth Circuit.
 Argued: March 31, 1993.
Decided: September 28, 1993.
 
 Appeals from the United States District Court for the Western District of Virginia, at Harrisonburg. James H. Michael, Jr., District Judge. (CA-88-105-H)
 Robert H. Chappell, Jr., Christian, Barton, Epps, Brent & Chappell, Richmond, Virginia, for Appellant.
 Phillip C. Stone, Wharton, Aldhizer & Weaver, Harrisonburg, Virginia, for Appellee.
 Paul W. Jacobs, II, Mary M. Grove, Christian, Barton, Epps, Brent & Chappell, Richmond, Virginia; Patrick J. Morrissey, Okanogan, Washington; Stuart F. Pierson, Davis, Wright, Tremaine, Washington, D.C., for Appellant.
 Mark D. Obenshain, Wharton, Aldhizer & Weaver, Harrisonburg, Virginia; Paul J. Neal, Jr., Woodstock, Virginia, for Appellee.
 W.D.Va.
 AFFIRMED.
 Before MURNAGHAN, HAMILTON, and WILLIAMS, Circuit Judges.
 PER CURIAM:
 
 OPINION
 
 1
 Brewster Heights Packing, Inc. ("Brewster Heights") is the appellant and cross-appellee in a case originally brought by Agri-Tech, Inc. ("Agri-Tech"), the appellee and cross-appellant, to collect the unpaid part of the purchase price under a contract. Pursuant to the contract, Brewster Heights purchased apple packing machinery that was manufactured and delivered by Agri-Tech. The agreement explicitly chose Virginia law as the law of the case. Following a jury trial and a judgment on the verdict in the United States District Court for the Western District of Virginia, Agri-Tech was awarded $340,211.28, as well as significant attorneys' fees and late charges, on its breach of contract claim.
 
 
 2
 Brewster Heights has appealed the verdict and has asserted numerous errors. First, Brewster Heights has contended that the district court erred when it invoked the parol evidence rule to exclude evidence of oral terms agreed upon prior to the execution of the contract with Agri-Tech. Brewster Heights further has alleged that the district court improperly dismissed its counterclaims alleging fraud and a violation of the State of Washington Consumer Protection Act and improperly limited jury consideration of its damages solely to repair and replacement costs (for which the jury awarded $58,063.54). Finally, Brewster Heights has questioned whether the district court properly calculated the award for late fees under the parties' contract and applicable Virginia law.
 
 
 3
 Agri-Tech has conditionally asserted a cross-appeal. It has contended that the district court improperly denied its motion to dismiss Brewster Heights' affirmative defense of misrepresentation.
 
 
 4
 The contract between Agri-Tech as seller and Brewster Heights as buyer was one by which Brewster Heights agreed to purchase apple packing equipment from Agri-Tech at a price of $850,528.18. Brewster Heights is a Washington state corporation that processes and packages apples. Agri-Tech, a Virginia corporation, manufactures and sells fruit and vegetable processing equipment. The terms of the contract were negotiated over several months by Brewster Heights' president, Ed Pariseau, and Agri-Tech's Western Regional Sales Manager, Greg Johnson. Pariseau signed a "Conditional Sales Contract," which was later approved and signed by Agri-Tech's chief executive officer, Robert A. Coffelt. The contract provided for an initial down-payment followed by payment in three installments.
 
 
 5
 Brewster Heights, after delivery and installation took place, initially complied with the contract. A dispute between the parties arose, however, when Brewster Heights complained that Agri-Tech had fallen behind schedule and that the equipment delivered did not fully conform to contract requirements. Agri-Tech made some replacements of faulty equipment. However, Brewster Heights, believing that the Agri-Tech supplied equipment continued to perform improperly, eventually refused to make further payments. At the point of its refusal, Brewster Heights had paid the down-payment and the first installment under the contract. Brewster Heights has claimed that as a result of the allegedly faulty equipment, it has incurred over $150,000 in repair and replacement costs.
 
 
 6
 Agri-Tech filed suit in the United States District Court for the Western District of Virginia in April 1988, to recover the unpaid balance of the purchase price. In response, Brewster Heights asserted several affirmative defenses and numerous counterclaims. Eventually filing two amended answers, its counterclaims included claims of fraud and fraudulent concealment, a violation of the Washington Consumer Protection Act, and breach of contract.
 
 
 7
 In April, 1990, the district judge granted in part Agri-Tech's motion for partial summary judgment, dismissing Brewster Heights' common law fraud and fraudulent concealment counterclaim and state statutory counterclaims. In so doing, the district court relied in part on the choice-of-law provision contained in the parties' contract. The district court also dismissed Brewster Heights' claim for consequential damages. It sustained, however, several of Brewster Heights' affirmative defenses as well as its breach of contract counterclaim.
 
 
 8
 The first trial was declared a mistrial due to a juror illness. Eventually, however, the case was tried before a jury in November, 1991. Before both trials, the district court considered counsels' arguments on the issue of excluding testimony of oral promises made prior to the execution of the contract. The jury ultimately awarded Agri-Tech $340,211.28 and awarded Brewster Heights $58,063.54 for its repair costs. The court later awarded significant attorneys' fees and late charges in Agri-Tech's favor.
 
 
 9
 * Brewster Heights has vigorously contended that both it and AgriTech intended at the time of their contract to be bound to their written agreement and to prior oral discussions. As evidence of the mutual intent just described, Brewster Heights has primarily pointed to "undisputed" testimony that Agri-Tech-specifically sales manager Greg Johnson-had orally promised and agreed that the A and B lines of the equipment would have the capacity to pack a total average of 1,000 cartons per hour. Brewster Heights has contended that the largest portion of its damages stems from the loss of that orally bargained-for system, i.e., the difference between the value of a system that can process roughly 900 cartons per hour and one that could have processed 1,000 cartons per hour.
 
 
 10
 The district court ruled in several hearings before the trial that the parol evidence rule under Virginia Code § 8.2-202 prohibited the evidence of the oral statements made prior to the signing of the contract. Section 8.2-202 of the Virginia Code states:
 
 
 11
 Terms with respect to which the confirmatory memoranda of the parties agree or which are otherwise set forth in a writing intended by the parties as a final expression of their agreement with respect to such terms as are included therein may not be contradicted by evidence of any prior agreement or of a contemporaneous oral agreement but may be explained or supplemented
 
 
 12
 (a) by course of dealing or usage of trade (§ 8.1-205) or by course of performance (§ 8.2-208); and
 
 
 13
 (b) by evidence of consistent additional terms unless the court finds the writing to have been intended also as a complete and exclusive statement of the terms of the agreement.
 
 
 14
 Va. Code Ann. § 8.2-202 (Michie 1991).
 
 
 15
 The second line of the parties' contract states, in large, capital letters, that the seller agrees to sell the equipment to the buyer "subject to the terms and conditions" set forth in the agreement. Listed under the terms and conditions of the contract is a disclaimer clause. Specifically, under the heading of "Warranty," the contract states, in capital letters and in slightly larger print from the surrounding paragraphs:
 
 
 16
 THERE ARE NO UNDERSTANDINGS, REPRESENTATIONS OR WARRANTIES OF ANY KIND EXPRESS, IMPLIED, STATUTORY OR OTHERWISE, INCLUDING, BUT WITHOUT LIMITATION THE IMPLIED WARRANTIES OF MERCHANTABILITY AND FITNESS FOR A PARTICULAR PURPOSE NOT EXPRESSLY SET FORTH HEREIN, AND SELLER SPECIFICALLY DISCLAIMS THE IMPLIED WARRANTIES OF MERCHANTABILITY AND FITNESS FOR A PARTICULAR PURPOSE.
 
 
 17
 The district court, after reviewing the depositions and considering the evidence from Brewster Heights concerning oral agreements, concluded that the conditional sales contract constituted the final expression of the parties. It found that the key clause was an "easily recognizable and legally sufficient merger clause which fully supports a conclusion that the contract was and was intended to be a complete and exclusive statement of the contract terms."
 
 
 18
 Brewster Heights contended in response that the contract, which consisted of a two-page document incorporating a diagram of the equipment and seven pages of equipment details, contained no well-drafted merger clause that should prevent the introduction of equipment specifications previously agreed to by sales manager Johnson. Compare Hoover Universal, Inc. v. Brockway Imco, Inc., 809 F.2d 1039, 1043 (4th Cir. 1987) (excluding parol evidence in a case in which the contract at issue contained a warranty disclaimer and a lengthy merger clause stating that the contract was the parties' "entire understanding").
 
 
 19
 The clause in the parties' contract prohibited the inclusion of any understandings or representations not expressly included in the contract. We agree with the district court that Brewster Heights must abide by the terms of the contract and cannot resort to evidence of oral promises concerning performance requirements. The critical clause was typed out in capital letters and appears larger than the surrounding paragraphs. See, e.g., Va. Code § 8.1-201(10) (Michie 1991) (stating that terms in a contract are "conspicuous" when "a reasonable person against whom it is to operate ought to have noticed it;" conspicuous language includes words that are "in larger or other contrasting type or color"); Armco, Inc. v. New Horizon Dev. Co., 229 Va. 561, 331 S.E.2d 456 (1985) (quoting § 8.1-201(10) and holding the same); see also Va. Code § 8.2-316(2) (Michie 1991) (language limiting warranties must be conspicuous). It is not controlling that the disclaimer contained in the contract did not explicitly state that the contract represented the "entire understanding and agreement between the parties" as did the clause in Hoover. More explicit language of disclaimer was unnecessary, for there simply was no question or danger of overreaching in the instant case. Brewster Heights and Agri-Tech are two sophisticated corporations, and Brewster Heights was represented during negotiations by its president. As the district court noted, had Brewster Heights carefully examined the contract, it would have been fully aware of the nature of its terms. In short, the disclaimer clause provided sufficient notice to Brewster Heights.
 
 
 20
 Moreover, and most significantly, it appears that Brewster Heights intended to use the parol evidence not to explain or to supplement the contract-as is permitted under § 8.2-202(a)-but rather to contradict the limitation of warranties contained in Paragraph 4. Further, if the writing was intended as the final expression of at least part of the parties' agreement, it could be supplemented with parol evidence of consistent additional terms. The evidence of early discussions concerning extensive performance requirements and expectations, however, contradicts the disclaimer clause and thus was properly excluded.
 
 
 21
 Finally, Brewster Heights cannot circumvent the contract's terms by resorting to arguments of mistake. Parol evidence is admissible to establish the fact of mutual mistake in making a contract or to establish a unilateral mistake accompanied by fraud. See, e.g., Shevel's Inc.-Chesterfield v. Southeastern Assoc., Inc., 228 Va. 175, 320 S.E.2d 339 (1984). However, the record does not support a finding that, in the formation of the contract, the parties were operating fraudulently or under a mistake.
 
 II
 
 22
 Brewster Heights also has challenged the dismissal of its counterclaims alleging fraud and fraudulent concealment and a violation of the Washington Consumer Protection Act. Brewster Heights primarily had alleged in support of its counterclaims that Agri-Tech knowingly or recklessly misrepresented or concealed its capability to perform the contract. In support of those allegations, it claimed that Agri-Tech made inaccurate statements about its ability to comply with the agreed upon schedule. In addition, Brewster Heights asserted that at some point during its performance Agri-Tech learned but failed to disclose that it was encountering problems with the plastic hubs used in the brushwasher/waxers it had assembled for the project.
 
 
 23
 The district court dismissed Brewster Heights' counterclaim alleging fraud and fraudulent concealment and its state statutory counterclaims. In so doing, the court's analysis was driven by the provision in the parties' contract selecting Virginia law as the law of the contract. Citing Virginia case law, the district court concluded that with respect to the counterclaim for fraud and fraudulent concealment, Brewster Heights had failed to show a tort independent of the parties' contractual relationship. See A & E Supply Co. v. Nationwide Mut. Fire Ins. Co., 798 F.2d 669, 672 (4th Cir. 1986) (stating that an independent tort "is one that is factually bound to the contractual breach but whose legal elements are distinct from it"), cert. denied, 479 U.S. 1091 (1987). Brewster Heights, the court continued, had not demonstrated a misrepresentation of a pre-existing fact but instead had alleged essentially unfulfilled promises-in other words, a classic breach of contract claim. See, e.g., Lloyd v. Smith, 150 Va. 132, 142 S.E. 363 (1928). The district court then dismissed Brewster Heights' statutory counterclaims because "the contract at issue in this lawsuit specifically provides that Virginia law should be applicable to this case."
 
 
 24
 The contract at the heart of the instant case does contain a choice-of-law provision which states:
 
 
 25
 This Contract shall be governed by and construed under the Laws of the Commonwealth of Virginia, which is the location of where the Seller will accept this contract, if the same is accepted. Any action regarding the construction or interpretation of this Agreement, or alleging a breach of this Agreement or in any way related to this Agreement, must be brought in the Commonwealth of Virginia.
 
 
 26
 Thus, the agreement plainly provided that all contractual disputes would be determined in accordance with Virginia law and also that the parties would be required to bring any action in"any way related" to the agreement in Virginia. Sitting in diversity, a district court should apply the forum's (Virginia's) choice-of-law rules. Under Virginia Code § 8.1-105, a choice-of-law provision included in a contract will be binding on the parties as long as the "transaction bears a reasonable relationship" to the state selected. Va. Code Ann. § 8.1105(1) (Michie 1991).[1] The district court properly found that Virginia clearly bore a reasonable relationship to the transaction and to the parties: Agri-Tech is a Virginia corporation and some work on the contract was performed in Agri-Tech's Virginia facility. Finally, the parties also correctly note that under Virginia law tort actions are governed by the law of the place where the wrongdoing occurred. See, e.g., McMillan v. McMillan, 219 Va. 1127, 253 S.E.2d 662 (1979).
 
 
 27
 The parties disagree, however, as to whether Brewster Heights' counterclaims are properly characterized as torts, and thus governed by and analyzed under the law of Washington, or as contract claims, and thus determined by the law of Virginia. In line with the district court's analysis, Agri-Tech has urged that Brewster Heights' "tort" counterclaims are in essence disguised contract claims that should be analyzed and dismissed under Virginia law. According to Agri-Tech, there has been no showing that it breached a duty independent of its contractual duties.
 
 
 28
 We need not resolve the parties' dispute as to the proper choice of law, however, because we conclude that under either the law of Virginia or Washington, Brewster Heights' claims must fail. The company's fraud counterclaim involves at its core issues of contractual interpretation and enforceability. The liability alleged is not predicated upon actions separate and distinct from the contract but arises instead from Agri-Tech's duties to perform under the contract. As described by Brewster Heights, the crux of its fraud claim is that Agri-Tech made statements or promises about the quality and production capacity of the packing equipment it was to design and then later failed to inform its buyer about the concerns with and modifications to the plastic hubs. Nothing in the record supports a finding that Agri-Tech had no intention to supply proper equipment or that it knew or should have known at the time it made the statements that its equipment would not be able to perform as Brewster Heights expected. In short, the allegations may be actionable in contract (i.e., breach of contract or breach of warranty), but they do not give rise to the independent tort of fraud in either Virginia or Washington.
 
 
 29
 The cases cited by Brewster Heights, Ware v. Scott, 220 Va. 317, 257 S.E.2d 855 (1979), and Haberman v. Washington Pub. Power Supply Sys., 109 Wash. 2d 107, 744 P.2d 1032 (1987), are inapposite. In both cases, the courts, citing to the Restatement (Second) of Tortss 551 (1977), addressed representations of fact that were or became untrue. The "truth" of those representations was not disclosed to or discovered by the innocent parties until after injury had occurred. See Ware, 220 Va. at 317, 257 S.E.2d at 857 (Seller represented to buyer that house's water problems had been corrected; however, before the closing, the house was flooded, and the seller did not disclose that fact to the buyer.); Haberman, 109 Wash. 2d 167, 744 P.2d at 1070 (fraudulent financial information given to purchasers of securities and that fact was not disclosed).[2] In the instant case, by contrast, Brewster Heights points to no "statements" or "representations" as that term is used in the context of fraud claims but instead relies solely on promises to perform that later allegedly were not honored. See, e.g., Lissmann v. Hartford Fire Ins. Co., 848 F.2d 50, 53 (4th Cir. 1988) (distinguishing between a claim of fraud and a breach of contract claim and noting that under Virginia law "[a] promise to perform an act in the future is not, in a legal sense, a representation as that term is used in the fraud context"); cf. Blanton v. Mobil Oil Corp., 721 F.2d 1207, 1218 (9th Cir. 1983) (applying Washington law and stating that "promissory fraud only exists when a promise is made with a 'present intent not to attempt the future fulfillment of the promise' " (quoting Fruit Indus. Research Found. v. National Cash Register Co., 406 F.2d 546, 550 (4th Cir. 1964))), cert. denied, 471 U.S. 1007 (1985). To quote from one court, "This is the stuff of a contract claim, not fraud." Computerized Radiological Servs., Inc. v. Syntex Corp., 595 F. Supp. 1495, 1504 (E.D.N.Y. 1984), aff'd in part and rev'd in part, 786 F.2d 72 (2d Cir. 1986).
 
 
 30
 Brewster Heights' statutory counterclaim must likewise suffer dismissal. The district court dismissed Brewster Heights' counterclaim premised on the Washington Consumer Protection Act because "the contract at issue in this lawsuit specifically provides that Virginia law should be applicable to this case." Even if Washington law is applied to the case, however, it appears that the statutory counterclaim would not survive. As an example, Brewster Heights has failed to demonstrate an "impact on the public interest," one of five necessary elements for establishing a claim under Washington's Consumer Protection Act. See Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co., 105 Wash. 2d 778, 719 P.2d 531 (1986) (Claimant alleging violation of the Consumer Protection Act must show: (1) unfair or deceptive act or practice; (2) occurring in trade or commerce; (3) a public interest impact; (4) injury to the plaintiff in his or her business or property; and (5) causation.). In a consumer transaction, factors relevant to determining if an act"affects the public interest" include whether the unfair act was part of a pattern or generalized course of conduct, whether there is a "real and substantial potential for repetition," or whether many consumers were affected by the transaction. Id. at 537-38.
 
 
 31
 The record does not support a finding that the alleged misrepresentation and/or acts of Agri-Tech had a public interest impact. The evidence instead demonstrates that a dispute arose between two contracting parties concerning time-schedules and equipment performance. The record, for example, shows only that one other customer in Washington received "plastic hubs" in its equipment, and, after speaking with the hub manufacturer and seeking advice, Agri-Tech replaced the plastic hubs with metal ones. In short, there is insufficient evidence to demonstrate an effect on other consumers or a "real and substantial potential" for repetition of unfair conduct.
 
 III
 
 32
 The court, after dismissing Brewster Heights' tort counterclaims, properly excluded from the jury's consideration evidence of consequential damages. The contract limited the scope of recoverable damages and plainly excluded recovery for consequential damages.
 
 IV
 
 33
 Agri-Tech's cross-appeal was defensive. It sought relief only if the case should be remanded on Brewster Heights' assertions of error. In view of our conclusions, that condition has not been met, and we need not address the cross-appeal.
 
 V
 
 34
 Finally, Brewster Heights has voiced objection to the award of late charges. The parties took into consideration the possibility of late payments, and the contract specifically provides for late fees:
 
 
 35
 Interest deferred payments shall be paid by buyer at the rate of 0% per annum on the unpaid balance, such interest to be payable along with such deferred payments. Payments that are delinquent more than 10 days will be subject to a late charge of 1-1/2% of the payment amount due charged monthly (18% per annum), or the highest lawful contract rate up to 18%. All prices are FOB shipping points and do not include installation unless otherwise specified.
 
 
 36
 (Emphasis added).
 
 
 37
 Brewster Heights has argued that the contract rate calling for a late charge of 1-1/2% per month, i.e., 18% per annum, violated the Code of Virginia. Citing § 6.1-330.80, Brewster Heights seems to be arguing that the Virginia Code permits in such cases a maximum late charge of 5% per annum. Section 6.1-330.80 only states however:
 
 
 38
 A. Any lender or seller may impose a late charge for failure to make timely payment of any installment due on a debt, whether installment or single maturity, provided that such late charge does not exceed five percent of the amount of such installment payment and that the charge is specified in the contract between the lender or seller and the debtor....
 
 
 39
 C. Any provision for late charges in excess of the amount permitted by this section shall be void as to such excess but shall not otherwise affect the validity of the obligation.
 
 
 40
 Va. Code Ann. § 6.1-330.80 (Michie 1988).
 
 
 41
 The Magistrate Judge concluded that the contract rate properly applied:
 
 
 42
 I read 6.1-330 in entirety.... Simply put, I do not believe that 6.1-330(80) is the provision that applies to these types of agreements .... The court would construe that if the lawful contract rate was less than 18 percent per annum that would have to apply as a matter of law. But since it is not, then the 18 percent per annum applies.
 
 
 43
 (Emphasis added). We agree with the lower court;s 6.1-330.80 does not on its face apply to the kind of arrangement specified in the parties' contract. Moreover, § 6.1-330.76 in the same chapter of the Virginia Code makes it lawful for corporations specially to contract for different sums. Section 6.1-330.76 states:
 
 
 44
 No corporation, partnership ... shall, by way of defense or otherwise, avail itself of any of the provisions of this chapter or any other section or case law relating to usury or compounding of interest to avoid or defeat the payment of any interest or any other sum which it has contracted to pay. Nothing contained in any of such sections shall be construed to prevent the recovery of such interest or any other sum, though it is more than contract rate of interest and though the fact appears on the face of the contract.
 
 
 45
 Va. Code Ann. § 6.1-330.76 (Michie 1988).
 
 
 46
 Nothing to which Brewster Heights has cited prohibits the contracted-for late charge of 1-1/2% per month (18% per annum).
 
 
 47
 Because we find no error requiring reversal, the judgment accordingly is
 
 
 48
 AFFIRMED.
 
 
 
 [1]
 Section 8.1-105(1) states in pertinent part:
 [W]hen a transaction bears a reasonable relation to this Commonwealth and also to another state or nation the parties may agree that the law either of this Commonwealth or of such other state or nation shall govern their rights and duties.
 
 
 [2]
 The examples provided in the Restatement (Second) of Torts § 551 (1977) further illustrate the contractual as opposed to fraudulent nature of Brewster Heights' counterclaim. Section 551(2)(c), the section to which Brewster Heights refers, sets forth the duty of a seller to disclose to a buyer "subsequently acquired information that he knows will make untrue or misleading a previous representation that when made was true or believed to be so." Id. at 119. One example given to demonstrate such a situation, however, involves the sale of a thoroughbred mare that is represented to be in foal. The mare miscarries, and the information is never disclosed to the buyer before the final purchase. Under those circumstances, the seller has made a misrepresentation of fact that gives rise to liability under § 551. Id. at 122