# HUGH O. MILLER, ET AL.

## V.

# FRED H. QUARLES

Record No. 910101

November 8, 1991

Present: All the Justices

*Francis McQ. Lawrence (St. John, Bowling & Lawrence*, on briefs), for appellants.
*Robert M. Musselman (Ronald M. Huber*, on brief), for appellee.

JUSTICE WHITING delivered the opinion of the Court.

In this case, we decide whether an agent's negligent performance of his principal's contract subjects the agent to tort liability to the other contracting party.

In 1986, Colonial Electric Company, Inc. (Colonial) was seeking a loan of $45,000,000 to enable it to purchase land and build a hotel and other buildings to be known as Calibogue Gardens at Hilton Head, South Carolina. Hugh Oliver Miller and Lawrence Wayne Burks, president and vice president respectively of Colonial, contacted Fred H. Quarles, a vice president of Commonwealth Capital Corporation (Commonwealth Capital), a loan broker.

After some negotiation, a few days before May 26, 1986, Quarles advised Colonial that financing could be arranged through James R. Keller, another loan broker who was in Europe at the time. Quarles explained that Keller could arrange to obtain

the funds from undesignated foreign lenders if Colonial would secure a contract to purchase the land and would deposit $65,000 with Commonwealth Capital. Miller testified that Quarles told him that:

> Fifty thousand dollars of it was supposed to be in a custodial account, escrow if you will, that would be used only at the time of funding of this $45 Million loan . . . . [N]o money was to be at risk at any time except the $5,000 [for incidental expenses]. Ten thousand dollars of it was to be held in the escrow account to be used for courier and travel expenses at the time of closing, because it was a probability that someone would have to go to Europe to bring the money back.

Neither Miller nor Burks knew anything about Keller. Miller testified that the only information Quarles gave him about Keller was that he knew Keller "to be a capable person . . . that he had closed a lot of deals with him [and that Keller] had vast connections with oil money and Swiss banks."

Pursuant to Quarles's request, Colonial secured the required contract to purchase Calibogue Gardens and delivered the $65,000. Accordingly, on May 26, 1986, Colonial and Capital signed a contract by which Capital undertook to secure the necessary financing for a fee of five percent of the amount of the loan secured.

Although Quarles knew nothing of where and how Keller would hold the $50,000 escrow deposit, at Keller's request, Quarles had that deposit sent to Keller in Amsterdam. Keller was to hold the deposit in escrow until he had secured a binding commitment from a prospective lender to finance Colonial's project.

Keller never secured the commitment and never returned the deposit despite his promises to do so. Keller's present whereabouts is unknown. Capital has refunded $10,000 of the $65,000 deposit that it had held for courier and travel expenses in case the loan were closed.

Miller and Burks, as assignees of Colonial's causes of action, sued Capital and Quarles to recover the $50,000 escrow deposit. In two of the six counts of their motion for judgment, they alleged that Capital and Quarles were liable for breach of contract and for negligence in delivering the $50,000 escrow deposit to Keller.

At a trial before the court, Quarles's testimony indicated: (1) that although he understood that Keller was in the business of "selling collateral to banks," Quarles conducted no "inquisition on what his business was and how he was going about doing it"; (2) that Keller had no staff or office and that his "permanent residence was in Guadalajara, Mexico"; (3) that his only information about Keller's financial position was what Keller had told him; (4) that none of the projects Quarles had discussed with Keller had "generated any income"; and (5) that approximately a month before May 26, 1986, Quarles had: (a) wired Keller "roughly $150 once when he was a little short of cash"; (b) given Keller a plane ticket from London to Zurich when "circumstances had put him in an awkward position, momentarily"; and (c) wired $1,305 to Keller as a "[c]ontribution to expenses to develop some contacts in London."

Additionally, the evidence indicated that Quarles did not disclose to Miller and Burks: (1) that he had never met Keller personally; (2) that his only introduction to Keller was by telephone a few months earlier; or (3) that Quarles had no information about Keller's financial position apart from what Keller had told him.

After hearing the evidence, the trial court found that "the procedures followed in this case were so bizarre and capricious as to categorize them unquestionably as negligent when applied to the handling of money," and held Capital liable for negligence and breach of contract. However, the trial court concluded that because "the evidence indicates that Quarles was acting carefully within the scope of his employment as an officer of Commonwealth Capital, the negligent breach which gives rise to the damage flows from the contract between the plaintiffs and Commonwealth Capital, consequently, we find no liability against the defendant Quarles." Miller and Burks appeal this holding.

Although Miller and Burks concede that Quarles is not liable for breach of Capital's contract with Colonial, they contend that Quarles is liable for his negligence in the performance of that contract. In response, Quarles argues that

[a]t no time during which the parties had dealings was there any individual enrichment on the part of Fred Quarles or any action by him inconsistent with his position as officer or agent of Commonwealth Capital. The right, therefore, of

Miller to sue is determined by contract, to which Quarles was not a party.

We do not agree.

■ The trial court's finding that Capital was negligent is necessarily premised upon the fact that Quarles was also negligent because he was the only party who acted for Capital. *Roughton Pontiac Corp.* v. *Alston*, 236 Va. 152, 156, 372 S.E.2d 147, 149-50 (1988); *Lough* v. *Price*, 161 Va. 811, 818-19, 172 S.E. 269, 271 (1934). And, an agent has a *tort* liability for injuries to a third party resulting from the agent's negligent act while acting within the scope of his employment by the principal. *McLaughlin* v. *Siegel*, 166 Va. 374, 376-77, 185 S.E. 873, 874 (1936).

Quarles contends that this rule does not apply where the agent's negligence occurred in his performance of a *contract* between the injured party and the agent's principal. Quarles's only support for this contention is the following statement of two legal principles that have no application to this case. "To hold [Quarles liable] would call into question the basic idea of using a corporation to limit liability. Every breach of contract could be termed a negligence action. *Kamlar Corporation* v. *Haley*, 224 Va. 699, 299 S.E.2d 514 (1983)."

■ In the first place, Quarles is not being sued in his capacity as a stockholder of Commonwealth Capital but as its agent. Secondly, in *Kamlar*, there was no tort claim pending in relation to the cause of action for breach of contract for which punitive damages were sought. In the words of *Kamlar*, "the dispositive question, then, is whether a bad motive, underlying a breach of contract, in the absence of an independent willful tort, will support an award of punitive damages." *Id.* at 704, 299 S.E.2d at 516. In contrast, Miller and Burks are not trying to "turn a breach of contract into a tort"; they assert the same liability for tort upon the agent that the trial court has imposed upon his principal.

■ Both principal and agent are jointly liable to injured third parties for the agent's negligent performance of his common law duty of reasonable care under the circumstances. *Thurston Metals & Supply Co.* v. *Taylor*, 230 Va. 475, 483-84, 339 S.E.2d 538, 543 (1986). Should such liability be imposed, the principal is entitled to indemnification from the agent. Restatement of Restitution § 962, at 418-21 (1937). Furthermore, a principal is liable to the other contracting party who has been damaged by the

agent's negligent performance of the principal's *contract* with the other party. *Wood* v. *American National Bank*, 100 Va. 306, 316, 40 S.E. 931, 934 (1902). And, we see no reason why the negligent agent's act should not impose upon him the same liability.

Therefore, we conclude that the trial court erred in finding that Quarles was not liable for his negligent act. Accordingly, we will reverse that part of the judgment in which the trial court held that Quarles was not liable, and we will enter final judgment against Quarles.

*Reversed and final judgment.*