## CIRCUIT COURT OF THE CITY OF RICHMOND

P & T Associates

v.

Paciulli, Simmons
and Associates, Ltd.

April 30, 1992

Case No. LS-4378–4

BY JUDGE RANDALL G. JOHNSON

Plaintiff, P & T Associates, is a Virginia general partnership which was formed for the purpose of purchasing and developing a specific tract of land in Henrico County. Prior to purchasing the land, P & T contracted with defendant Paciulli, Simmons & Associates, Ltd. ("PSA"), an engineering, planning, and surveying firm, for PSA to perform engineering studies and prepare a feasibility study for the land, including whether there were any drainage and wetlands problems that would have made it economically unfeasible to develop the property. PSA completed the study in April, 1989, which did not disclose any wetlands problems. Relying on that study, P & T entered into a contract to purchase the land.

Later, and still prior to closing the transaction, the issue of a potential wetlands problem arose. After conducting further engineering work, PSA issued a letter to P & T which stated that wetlands did not exist on the land except some small pockets (less than one acre) adjacent to certain drainage channels. In addition, PSA signed a memorandum to the lender, Central Fidelity Bank, indicating that the proposed project planned for the property was in compliance with all applicable restrictions, county ordinances, zoning requirements, and the Chesapeake Bay Preservation Act. Relying on PSA's representations, P & T closed the transaction and took title to the property.

Soon after P & T began developing the property, the U. S. Army Corps of Engineers advised P & T that the land could not be devel-

oped because of a wetlands problem which covered more than 65% of the usable land, and development was delayed by approximately one year. As a result, P & T filed this suit seeking damages on theories of negligence and breach of contract. PSA demurs to both theories.

## 1. *Negligence*

PSA's demurrer to the negligence claim is based on its argument that a cause of action for negligence is not available to recover purely "economic" losses resulting from a breach of contract. Indeed, in a consistent line of fairly recent cases, the Supreme Court of Virginia has held exactly that. For example, in *Blake Construction Co. v. Alley*, 233 Va. 31, 353 S.E.2d 724 (1987), a general contractor sued an architect for damages allegedly sustained as a result of the architect's negligent performance of architectural services. The trial court, noting that there was no contract between the contractor and the architect, but only between the contractor and the owner and between the architect and the owner, sustained the architect's demurrer. The Supreme Court affirmed. The Court stated:

> The architect's duties both to owner and contractor arise from and are governed by the contracts related to the construction project. While such a duty may be imposed by contract, no common-law duty requires an architect to protect the contractor from purely economic loss. There can be no actionable negligence where there is no breach of a duty "to take care for the safety of the person or property of another."

233 Va. at 34 (*quoting Bartlett v. Recapping, Inc.*, 207 Va. 789, 793, 153 S.E.2d 193 (1967)).

The Court went on to cite with approval the following portion of *Crowder v. Vandendeale*, 564 S.W.2d 879, 882 (Mo. 1978):

> A duty to use ordinary care and skill is not imposed in the abstract. It results from a conclusion that an interest entitled to protection will be damaged if such care is not exercised. Traditionally, interests which have been deemed entitled to protection in negligence have been related to *safety* or freedom from physical harm. Thus, where personal injury is threatened, a duty in negligence has been readily found. Property interests also have generally been found to merit

protection from physical harm. However, where mere deterioration or loss of bargain is claimed, the concern is with a failure to meet some standard of *quality*. This standard of quality must be defined by reference to that which the parties have agreed upon.

*Id.* at 34–35 (emphasis in original). The court then stated:

The parties involved in a construction project resort to contracts and contract law to protect their economic expectations. Their respective rights and duties are defined by the various contracts they enter. Protection against economic losses caused by another's failure properly to perform is but one provision the contractor may require in striking his bargain. Any duty on the architect in this regard is purely a creature of contract.

*Id.* at 35.

Next, in *Sensenbrenner v. Rust, Orling & Neale*, 236 Va. 419, 374 S.E.2d 55 (1988), plaintiffs hired a general contractor to build a house, which was to include an enclosed swimming pool. The general contractor then contracted with an architect and a swimming pool construction company, neither of whom entered into a contract with the plaintiffs, to design and build the pool. Plaintiffs later filed separate suits against the architect and pool company alleging that due to negligent design and supervising by the architect, and negligent construction work by the pool contractor, the pool, which was built on fill rather than on natural soils, settled, causing water pipes to break, which in turn caused substantial damage to the pool and the foundation of the house. Only negligence was alleged not breach of contract. In holding that no cause of action was stated in either suit, the Court said:

The law of torts is well equipped to offer redress for losses suffered by reason of a "breach of some duty imposed by law to protect the broad interests of social policy." *Kamlar* [*Corporation v. Haley*, 224 Va. 699] at 706, 299 S.E.2d at 517. Tort law is not designed, however, to compensate parties for losses suffered as a result of a breach of duties assumed only by agreement. That type of compensation necessitates an analysis of the damages which were within the contemplation of the parties when framing their agree-

ment. It remains the particular province of the law of contracts. *See id.*

The controlling policy consideration underlying tort law is the safety of persons and property — the protection of persons and property from losses resulting from injury. The controlling policy consideration underlying the law of contracts is the protection of expectations bargained for. If that distinction is kept in mind, the damages claimed in a particular case may more readily be classified between claims for injuries to persons or property on one hand and economic losses on the other.

The plaintiffs here allege nothing more than disappointed economic expectations. They contracted with a builder for the purchase of a package. The package included land, design services, and construction of a dwelling. The package also included a foundation for the dwelling, a pool, and a pool enclosure. The package is alleged to have been defective — one or more of its component parts was sufficiently substandard as to cause damage to other parts. The effect of the failure of the substandard parts to meet the bargained-for level of quality was to cause a diminution in the value of the whole, measured by the cost of repair. This is a purely economic loss, for which the law of contracts provides the sole remedy.

Recovery in tort is available only when there is a breach of a duty "to take care for the *safety* of the person or property of another." *Blake*, 233 Va. at 34, 353 S.E.2d at 726 (citations omitted) (emphasis added). The architect and the pool contractor assumed no such duty to the plaintiffs by contract, and the plaintiffs' complaint alleges no facts showing a breach of any such duty imposed by law.

236 Va. at 425 (emphasis in original).

And in *Rotonda Condominium Owners v. Rotonda Associates*, 238 Va. 85, 380 S.E.2d 876 (1989), a condominium owners' association sued a developer alleging that the developer was responsible for structural defects in a condominium complex. In affirming the trial court's dismissal of the plaintiff's negligence claim, the Court once again said:

> It is apparent from the motion for judgment and the association's argument concerning this count, that the Association sought only to recover damages for the economic losses associated with the cost of repairing the defects in the common elements. Such economic losses are not recoverable in tort; they are purely the result of disappointed economic expectations. The law of contracts provides the sole redress for such claims.

238 Va. at 90.

In addition, *Rotonda Condominium* made it clear that privity of contract, a missing element in *Blake Construction* and *Sensenbrenner*, makes no difference with regard to negligence actions being available to recover purely economic losses:

> Here, the unit owners and the Developer bargained for certain standards of quality which allegedly were not met. The unit owners' sole redress lay in actions for breach of their contracts of purchase or for breach of the statutory warranties.

*Id.*

Thus, the Supreme Court has repeatedly held that an action in negligence is inappropriate to redress purely economic losses. Since there is no allegation that PSA caused the wetlands problem on P & T's land or that PSA otherwise damaged that land, only economic losses are involved here. Accordingly, PSA's demurrer to the negligence count must be sustained.

In making this ruling, the court feels compelled to comment on an even more recent Supreme Court case involving the negligence - breach of contract dichotomy. In *Miller v. Quarles*, 242 Va. 343, 410 S.E.2d 639 (1991), plaintiffs entered into a contract with a loan brokerage company under which the brokerage company was to arrange financing to enable the plaintiffs to purchase land and build a hotel and other buildings in Hilton Head, South Carolina. After some negotiation, Quarles, a vice president of the brokerage company, told plaintiffs that financing could be arranged through one James R. Keller, another loan broker who was in Europe. Quarles explained that Keller could obtain the funds from undesignated foreign lenders if plaintiffs would secure a contract to purchase the land and would deposit $65,000, $60,000 of which was to be held in escrow, with

Quarles' company. Pursuant to Quarles' request, plaintiffs secured the required contract and delivered the $65,000. Quarles and his company then sent $50,000 of the deposit to Keller. Keller never secured the promised financing and never returned the $50,000. In fact, his whereabouts were unknown at the time of trial.

Plaintiffs sued Quarles and the brokerage company he worked for. In two of the six counts of the motion for judgment, plaintiffs alleged that Quarles and the brokerage company were liable for breach of contract and for negligence in delivering the $50,000 deposit to Keller. The trial court found that "the procedures followed in this case were so bizarre and capricious as to categorize them unquestionably as negligent when applied to the handling of money," (*see* 242 Va. at 346) and held the brokerage company liable for negligence and breach of contract. The trial court further held, however, that since Quarles was "acting carefully within the scope of his employment," *Id.*, he was not personally liable. The Supreme Court reversed the finding as to Quarles. Specifically, the Court stated:

> The trial court's finding that [the brokerage company] was negligent is necessarily premised upon the fact that Quarles was also negligent because he was the only party who acted for [the company] . . . . And, an agent has a *tort* liability for injuries to a third party resulting from the agent's negligent act while acting within the scope of his employment by the principal.

242 Va. at 347 (emphasis in original).

The obvious question, of course, is whether *Blake Construction, Sensenbrenner*, and *Rotonda Condominium* have now been overruled. I think not.

In *Blake Construction, Sensenbrenner*, and *Rotonda Condominium*, plaintiffs entered into contracts to have services or work performed on their property. At no time was any property *delivered* by plaintiffs to defendants, except, of course, monetary consideration for the contracts. By contrast, in *Miller*, in addition to contracting with Quarles' brokerage company for that company to provide a service, plaintiffs also delivered specific property, $65,000, to Quarles and his company. Of that amount, $60,000 was to be held in escrow, not as consideration for the contract, but until a binding loan commitment was secured. Thus, *Miller* differs from the other three cases in that specific property was delivered to the defendants and

was never returned. As such, Quarles and his company failed "to take care of the safety of the . . . property of another." *Blake Construction*, 233 Va. at 34. In other words, something was physically entrusted to Quarles' and his company's possession, care, and protection. They did not simply perform services. Accordingly, a duty arose apart from the contract, albeit as a result of the contract:

> Both principal and agent are jointly liable to injured third parties for the agent's negligent performance of his *common law duty* of reasonable care under the circumstances.

*Miller v. Quarles*, 242 Va. at 347 (emphasis added) *citing Thurston Metals & Supply Co v. Taylor*, 230 Va. 475, 483–84, 339 S.E.2d 538 (1986).

Because the case at bar does not involve delivery of property to defendant apart from the consideration paid for the contract, P & T's claim is not like the one in *Miller* but like those in *Blake Construction, Sensenbrenner,* and *Rotonda Condominium*. PSA's demurrer to Count I is sustained.

## 2. *Breach of Contract*

PSA's demurrer to the breach of contract claim states that "[t]o the extent that Count II [breach of contract] is premised upon a negligence theory, Count II fails to state a claim for which any relief can be granted." The demurrer also states that the motion for judgment does not allege any breach of contract. The court disagrees.

Paragraph 9 of the motion for judgment clearly states that PSA failed to properly recognize and identify the wetlands issue prior to closing. Paragraph 14 states that such failure constitutes a breach of contract. Such allegations survive the demurrer.