## CIRCUIT COURT OF LOUDOUN COUNTY

William R. Hemeon et al.

v.

Petro-Tech, Inc., et al.

September 2, 1993

Case No. (Law) 14579

BY JUDGE JAMES H. CHAMBLIN

This case is before the Court on the Motion for a Bill of Particulars and the Demurrer of the defendants, Petro-Tech, Inc., and Branch Highways, Inc., to the Motion for Judgment filed herein by William R. Hemeon, Hemeon Enterprises, Inc., t/a Dulles Shell, and Randy Hemeon & Associates. The Court heard oral argument on August 20, 1993.

For the reasons that follow, the Motion for a Bill of Particulars is denied and the Demurrer is sustained.

### Demurrer

Because this case is before the Court on a demurrer, the allegations of the Motion for Judgment are taken as true. The facts as stated herein are, therefore, derived from the Motion for Judgment.

Hemeon is the controlling principal and/or sole shareholder of the two corporate plaintiffs. The premises occupied by Dulles Shell on Sully Road in Loudoun County were leased from the owner by Hemeon Enterprises, which assigned the lease to Hemeon & Associates. Hemeon Enterprises, t/a Dulles Shell, owns and operates a service station business on the premises.

In March, 1991, Hemeon individually entered into contracts with Quarles Petroleum, Inc., providing for renovation of the premises by Quarles and the supplying by Quarles of petroleum products for resale at the premises. Quarles contracted with Petro-Tech to perform certain of the work as part of the contract between Hemeon and Quarles. On May 20, 1991, agents and employees of Petro-Tech while in the course of performing such work damaged certain underground storage tanks at the premises causing fuel oil to spill into the ground in substantial amounts. The resulting contamination and remediation efforts necessitated by the spill caused delays in the renovation schedule extending the period of non-operation of Dulles Shell during the renovation. All plaintiffs were damaged as a result of the delays and extended period of non-operation.

All of the plaintiffs are obligated to return the premises to the owner in their original condition, excepting normal wear and tear. The contamination resulting from the damage by Petro-Tech must be fully remediated before the plaintiffs' obligation to the owner can be fulfilled.

The plaintiffs believe that Branch Highways "is but an alter-ego" of Petro-Tech. No facts are alleged to support this belief.

The plaintiffs' suit is based upon negligence and strict liability. They assert that the defendants are liable "for all damage caused to plaintiffs and all costs of complete remediation for which each or any plaintiff is obligated."

Each ground of the Demurrer is addressed below.

1. *Lack of Privity — Economic Loss Versus Damage to Property*

The defendants assert that the plaintiffs seek compensation for an economic loss caused under the contract between Hemeon and Quarles or the subcontract between Quarles and Petro-Tech, not for damages to property, and that the motion for judgment fails to state a claim against either defendant because neither defendant is in privity with any plaintiff. The defendants rely on *Sensenbrenner v. Rust, Orling and Neale*, 236 Va. 419 (1988), and *Blake Construction Co. v. Alley*, 233 Va. 31 (1987).

If the plaintiffs' claims are for property damage, then lack of privity is no defense under § 8.01–223. However, if the claims are for pure economic loss, then lack of privity is a defense under *Blake* and *Sensenbrenner*.

The Motion for Judgment asserts damages for the delay in completing the renovation caused by the contamination and remediation efforts and for the cost of the remediation. To determine whether lack of privity is a defense, the damages claimed must be classified as either damage to property or economic loss. The classification must be done keeping in mind the distinction between the controlling policy considerations underlying tort law as opposed to the law of contracts. *Sensenbrenner*, 236 Va. at 425.

The controlling policy consideration underlying tort law is the protection and safety of persons and property from losses resulting from injury. The controlling policy consideration underlying the law of contracts is the protection of bargained-for expectations.

Certainly property was damaged; the underground tanks were physically damaged, and the ground was contaminated by the fuel oil that spilled. But this does not, in and of itself, make this a property damage case. If it did, then almost all breach of contract cases could be turned into tort actions.

The loss came during the performance of a contract. Petro-Tech would not have been on the premises and in a position to cause the damage but for a contract. Parties involved in a construction project resort to contracts and contract law to protect their economic expectations. Protection from a loss caused by a party failing to properly perform a contract is but one provision that a party may require in striking his bargain.

Hemeon contracted with Quarles for a renovation package. As part of the bargain, Hemeon required that the work be properly performed. Hemeon expected that the work would be properly performed so that no fuel oil would be spilled causing a contamination of the soil and leading to an extended non-operation period for the service station and additional expense to Hemeon. The faulty performance caused a diminution in value of the end product. It is an economic loss for which only the law of contracts provides a remedy.

There is no privity of contract between any of the plaintiffs and either of the defendants. Recovery in tort is available only when there is a breach of duty to take care for the safety of the person or property of another. *Blake*, 233 Va. at 34. Neither defendant assumed such a duty to the plaintiffs by contract, and no facts are alleged in the motion for judgment showing a breach of any such duty imposed by law.

The plaintiffs also have a further problem in that there are no allegations in the motion for judgment that support their having an interest in the land, the tanks or the fuel oil so as to give them standing to assert a cause of action in tort (assuming it is otherwise available) for negligent damage to property.

I do not agree with the plaintiffs that *Miller v. Quarles*, 242 Va. 343 (1991), impliedly overrules or modifies *Blake* and *Sensenbrenner*. The latter cases are not mentioned in *Miller*. From the opinion, it appears that the two cases were never argued or addressed. The opinion in *Miller* does not deal with the economic loss rule but only with the liability of an agent for negligent performance of his principal's contract to the other contracting party. *Miller* is both a negligence and a breach of contract case. The agent's actions were both negligent as to money paid to him on behalf of his principal and a breach of the contract between the principal and the other contracting party. To that extent, I agree with Judge Johnson's decision in *P & T Associates v. Paciulli, Simmons & Associates*, 27 Va. Cir. 405 (1992), where he opined that the distinction between *Miller* and the earlier cases arises out of the delivery of property to the defendant. Finally, the posture of the case in *Miller* when it arrived in the Supreme Court made it an agency case, not an economic loss case.

The plaintiffs have cited *City of Richmond v. Madison Management Group*, 918 F.2d 438 (4th Cir. 1990), but it is not applicable because it involved a fraud claim as opposed to a breach of contract claim.

The Demurrer is sustained on this ground.

## 2. *Strict Liability*

The Demurrer is sustained on this ground because the facts alleged do not show an abnormally dangerous activity under § 519(1) of the Restatement of Torts which governs the applicability of the doctrine of non-statutory strict liability in Virginia. *M. W. Worley Construction Co. v. Hungerford, Inc.*, 215 Va. 377 (1974). The renovation of a service station, even if it means excavating near or removing fuel tanks, is not an inherently dangerous operation. The operation of a service station is not inherently dangerous. *Daniel v. Kosh*, 173 Va. 352 (1939). The work done by Petro-Tech could have been done safely merely by taking reasonable precautions. *See, Philip Morris v. Emerson*, 235 Va. 380 (1988). The storage and removal of gasoline in underground storage

tanks is not an abnormally dangerous activity. *Arlington Forest Associates v. Exxon Corp.*, 774 F. Supp. 387 (E.D. Va. 1991).

### 3. *Branch Highway As "Alter-Ego" of Petro-Tech*

The Demurrer is sustained on this ground because the assertion in the motion for judgment that Branch Highway is the "alter-ego" of Petro-Tech is an allegation of a legal conclusion with absolutely no facts alleged to support it. A demurrer does not admit the correctness of legal conclusions in the motion for judgment. *Fox v. Custis*, 236 Va. 69, 71 (1988).

### 4. *Hemeon's Claims As A Shareholder of the Corporate Plaintiffs*

At oral argument, counsel for the plaintiffs conceded that Hemeon is not asserting a claim as a shareholder of either corporate plaintiff. Even if he were, the Demurrer would be sustained on this ground for the reasons stated in the Demurrer.

### *Motion for Bill of Particulars*

At oral argument, counsel for the plaintiffs voiced no objection to providing a bill of particulars as to the "alter-ego" conclusion. However, because the plaintiffs are given leave to file an amended motion for judgment in which they may include a claim under § 62.1–44.34:10 *et seq.*, the Motion for Bill of Particulars is denied at this time with the understanding that if the plaintiffs wish to pursue a claim against Branch Highway, then they will have to allege facts to support their cause of action and not merely conclusions of law.