## CIRCUIT COURT OF ORANGE COUNTY

Kenneth Wenke
and Yvette Wenke

   v.

Emerald Lake Homes, L.C., et al.

May 26, 2004

Case No. CL02-81

BY JUDGE DANIEL R. BOUTON

I am writing to advise you of the court's ruling in connection with the above referenced Motions for Summary Judgment

### Issues Before the Court

Two separate motions for summary judgment have been filed by Century 21 and argued by counsel. The first motion addresses whether the restrictive covenant that confers on lot owners in the Lake of the Woods Subdivision a right of first refusal with respect to the sale of any adjoining lot is void *ab initio* under the rationale of *Lake of the Woods Association, Inc. v. McHugh*, 238 Va. 1, 380 S.E.2d 872 (1989). The second motion states that Virginia's economic loss rule prevents the plaintiffs from recovering against Century 21 in this case. For the reasons that follow, the court will only analyze the second motion for summary judgment.

### Discussion and Analysis

To begin with, the plaintiffs claim that the economic loss rule does not prohibit them from maintaining an action against Century 21. They rely primarily on the reasoning of *Miller v. Quarles*, 242 Va. 343, 410 S.E.2d 639 (1991), in support of their position. Before examining the plaintiffs' argument regarding the application of *Miller* to the present case, it is important to

reiterate that the economic loss doctrine was not modified, curtailed, or diminished by the holding in the case. This point was emphasized by the Supreme Court in the more recent case of *Gerald M. Moore & Son, Inc. v. Drewry*, 251 Va. 277, 467 S.E.2d 811 (1996). There, the court emphasized that *Miller* does not alter the long established rule that requires privity of contract before a party can be held liable for economic loss: "An agent can be held liable for negligent performance of a contract to which he is not a party but to which his principal is a party. ... However, even if an agent's negligence is established, absent privity of contract, Virginia's economic loss doctrine precludes the recovery of damages based on economic loss alone. ... Our recent case of *Miller v. Quarles* does not alter the privity requirement for recovery of purely economic loss damages in negligence actions." *Id.*, at 279. Thus, *Miller* did not eliminate the privity requirement for the recovery of economic loss. In this regard, it should be noted that privity was never an issue in *Miller*. It was undisputed that privity existed between the agent's principal and the other contracting party and that the agent in question was at all times acting for his principal under the contract.

The court must next turn its attention to the principles that actually governed the analysis in *Miller*. The dispute in *Miller* involved whether the agent/principal relationship could lead to personal liability on the part of the agent based on negligent conduct by the agent under the terms of a contract between the agent's principal and the other party. *Miller* holds that an employee who is acting within the scope of his employment can be held personally liable for acts of negligence committed in connection with such a contract. Specifically, an agent's negligent performance of his duty under his principal's contract can render the agent liable in tort to the other party to the contract. Liability is premised on a breach of a common law duty that the agent owes to the other contracting party and is grounded in tort law.

Based on the above discussion, the court will now examine the impact of *Miller* on the present case. In order for *Miller* to apply, the court must first find that a binding contract exists between the plaintiffs and Ebbitt and Monick. The court must next conclude that Century 21 was the agent of Ebbitt and Monick for purposes of such a contract. Finally, the court must conclude that Century 21 had some common law duty toward the plaintiffs under the contract and that a breach of such duty would enable the plaintiffs to recover in tort against Century 21.

To begin with, it is not necessary for the court to decide whether the recorded covenant creates a binding contract between the Wenkes and Ebbitt and Monick. Counsel for Century 21 argues this issue at length on pages 13-17 of his memorandum. At this stage of the litigation, however, the court declines to rule on this point. Rather, for purposes of the analysis, the court

will assume that a contract exists between the Wenkes and Ebbitt and Monick based on the recorded covenant.

The court will next turn to the issue of agency and whether Century 21 had any common law duty to the Wenkes. It is on this point that the court finds that *Miller* can easily be distinguished from the present case. The primary reason for the court's conclusion is that the legal relationships that exist among the various parties here do not resemble those that can be found in the *Miller* case.

First, unlike the agent in *Miller*, the court would have to find here that Century 21 acted under two separate contracts in order to accept the theory of the plaintiffs. The first contract is the listing agreement between Century 21 and Ebbitt and Monick, where Century 21 served as a real estate agent in connection with the sale of the Lake of the Woods lot owned by Ebbitt and Monick. The second contract is the one that allegedly derives from the restrictive covenant. This second contract, if established, was between the plaintiffs and Ebbitt and Monick. The plaintiffs argue that Century 21 was an agent for Ebbitt and Monick under this contract; they rely exclusively on this second contract for relief in this case. The plaintiffs maintain that Century 21 was employed "outside of its real estate agent employment under the listing agreement, but employed nonetheless." (Plaintiffs' Memorandum in Support of Oral Argument, page 6.)

Based on Century 21's "employment" by Ebbitt and Monick outside the listing agreement under this second contract, the plaintiffs claim that Century 21 sent out notices under the restrictive covenant. According to the plaintiffs, the delivery of the notices by Century 21 is where it acted as an agent for Ebbitt and Monick based on the contract contained in the covenant.

Nevertheless, that Century 21 might have "voluntarily" undertaken action in connection with the notice requirement of the covenant does not create an obligation on the part of Century 21 to the Wenkes. What Century 21 did here did not make it an agent under the contract purportedly created by the covenant. Even assuming that the plaintiffs and Ebbitt and Monick had a contractual relationship that was premised on the covenant, no decided case stands for the proposition that Century 21 was an agent of Ebbitt and Monick under such a contract simply because it undertook to send out the notices. If such a contract exists under the covenant, it was formed and entered into without Century 21 and long before Century 21 had any involvement with the property of Ebbitt and Monick. The only connection that Century 21 had to any of the parties here stems from its listing agreement with Ebbitt and Monick. Century 21 never had any contact with the Wenkes.

In contrast, the agent found liable in *Miller* was not acting under two different contracts. He did not have a separate contract with his principal.

Moreover, he did not then "voluntarily" undertake any action on behalf of the principal based on a second or different agreement between the principal and the other contracting party. Rather, *Miller* involved a single business agreement between two parties in which it was undisputed that the agent of one party engaged in direct negotiations and dealings with the other party.

The court therefore concludes that Century 21 was not an agent for Ebbitt and Monick under any contract suggested by the terms of the restrictive covenant. In the absence of an agency relationship, Century 21 had no common law duty toward the plaintiffs. Thus, the plaintiffs are not able to rely on *Miller* for any recovery in this case. Without support from *Miller*, the economic loss doctrine and its privity requirement remain in full force and effect. The plaintiffs concede that there is no privity between them and Century 21 in connection with any contract that is based on the covenant. They also admit that they suffered only economic loss. Therefore, the court finds that no authority exists to support a recovery against Century 21.

One final point that supports the court's ruling and that distinguishes *Miller* from the present case should also be noted. The damages recoverable in *Miller* are different in nature from those that are claimed in the case before the court. Specifically, the evidence in *Miller* demonstrated that the agent in question had mishandled a specific sum of money that stemmed from the contractual relationship of the parties. Even though the breach of duty by the agent occurred as a result of a contract that existed, the recovery was in tort for the reasons discussed in the opinion. Here, the alleged damages have nothing to do with the tortious handling of money or the misappropriation of contractual funds; rather, the damages, if recoverable, result directly from the breach of the duty set forth in the covenant. One of the main arguments stressed by the plaintiffs is that the covenant creates a contractual duty rather than a common law duty based on tort principles. On this point, *Miller* does not hold that an agent is personally liable for damages that flow from the breach of a contractual provision.

## Conclusion

As a result of the above discussion, no material fact remains in dispute. Therefore, the second motion for summary judgment will be granted and Century 21 will be dismissed from the case. In light of the court's analysis, it is not necessary to rule on the first motion for summary judgment.