# CIRCUIT COURT OF THE CITY OF NORFOLK

Ripley Heatwole Co., Inc.,
t/a Cromwell House

v.

John E. Hall Electrical
Contractor, Inc.,
and Vulcan Security Systems, Inc.

August 24, 2005

Case No. (Law) L04-1556-01

BY JUDGE EVERETT A. MARTIN, JR.

The plaintiff owned a large apartment complex and contracted with John E. Hall Electrical Contractor, Inc. ("Hall") to design, install, and monitor a fire alarm system. At sometime thereafter, Hall entered into an agreement with Vulcan Security Systems, Inc. ("Vulcan") to monitor the plaintiff's fire alarm system. The plaintiff was not informed of this agreement.

On July 19, 2002, lightning struck the plaintiff's apartments at 9:10 p.m., and the plaintiff alleges that alarms instantly were sounded that Vulcan was supposed to monitor. The plaintiff further alleges that its night manager twice called Vulcan because there seemed to him a delay in the fire department's response and that Vulcan did not actually notify the fire department until 9:45 p.m. The plaintiff claims the delay caused it damages in the millions of dollars.

The plaintiff has filed a motion for judgment with counts for vicarious liability, material breach of contract, negligence, negligence *per se,* gross negligence, and punitive damages. Vulcan has demurred to all the claims; Hall apparently demurs to all claims but that for breach of contract. In its brief in

opposition, the plaintiff conceded that its claim for negligence is defeated by the damages limitation clause of the contract and that the count for vicarious liability was not intended to be a separate cause of action but, rather, to allege that Vulcan was Hall's agent and Hall is thus vicariously liable for Vulcan's actions. At the hearing on June 15, I sustained the demurrer to the claim for punitive damages. Thus the only remaining claims to resolve are those for material breach of contract, negligence *per se,* and gross negligence.

Before addressing those counts, I should state the ultimate issue before me: whether the defendants can enforce the contract's clause limiting damages. The three remaining claims are attempts to circumvent it. That clause provides:

> Customer's exclusive remedy with respect to any and all losses or damages resulting from any cause whatsoever, including the negligence, active or otherwise, of contractor, its employees, agents, or subcontractors shall be repair or replacement as specified above. . . .
>
> Customer [the plaintiff] agrees that, if contractor [Hall] should be found liable for loss, damage or injury due to a failure of the system or services in any respect, Contractor's liability shall be limited to $100.00 as the agreed upon damages and not as a penalty, as the exclusive remedy. If Customer desires Contractor to assume a greater liability, Contractor will amend this agreement to allow Customer to pay an additional amount necessary to purchase an insurance policy for such greater liability.

*Material Breach of Contract*

In paragraph 30 of the motion for judgment, the plaintiff alleges the facts it claims constitute a material breach. In paragraph 31, it asserts the legal conclusion that the material breach bars Hall from enforcing the contract clause at issue.

A material breach of contract excuses the non-breaching party from performance and prevents the breaching party from enforcing the contract. At the hearing, I asked if this rule barred a breaching defendant from asserting contract defenses or if it only barred a breaching party from suing on the contract as a plaintiff. In all of the material breach cases cited, save one, the rule is applied in the latter situation.

However, in *Federal Ins. Co. v. Starr Electrical Co.*, 242 Va. 459, 410 S.E.2d 684 (1991), a dispute between two insurance carriers concerning a subcontractor's claim against a general contractor, the Supreme Court did apply

the rule to bar a breaching defendant from asserting certain defenses. The subcontractor had been paid only about $21,000 of the $227,000 it was owed on the subcontract at the time the building burned. The subcontractor recovered most of the amount owed from its own insurer, Aetna, after the general contractor did not respond to an inquiry about the existence of a payment bond. Sometime thereafter, Federal, which had issued a payment bond to the general contractor on the project, sent a copy of it to the subcontractor. It seems then that Aetna, as the subcontractor's subrogee, sued Federal to recover the money it paid the subcontractor. The Supreme Court held that Federal could not assert the defenses that the subcontractor "assumed the risk of loss to its work" and "waived any right to recover from" the general contractor. The Court did not recite these provisions but observed they used "selective language in the subcontract and in the General Conditions to the general contract incorporated in the subcontract." 242 Va. at 467-68, 410 S.E.2d at 688. It assumed, without deciding, that they meant what Federal claimed they meant.

However, here, the clause in dispute was specifically designed to limit Hall's liability in the event of Hall's breach, and, if the plaintiff wished to be able to claim more than *de minimis* damages, the plaintiff could have paid a higher fee. The plaintiff apparently chose not to do so. I cannot believe the material breach rule is intended to bar the enforcement of an express contractual provision specifically limiting a party's liability in the event that party breaches the contract. To apply it in this manner would frustrate one of the essential purposes of contract law, the freedom of parties to limit their risks in commercial transactions. I sustain Hall's demurrer to this claim.

### Negligence Per Se

"[A] statute may define the standard of care to be exercised when there is an underlying common-law duty, but the doctrine of negligence *per se* does not create a cause of action where none otherwise exists." *Williamson v. The Old Brogue, Inc.*, 232 Va. 350, 355, 350 S.E.2d 621, 624 (1986). The only apparent duty between the plaintiff and Hall was contractual.

Furthermore, those cases in which the issue has been presented have held that the Building Code was enacted to protect "the health, safety, and welfare of residents of the Commonwealth," not the economic interests of property owners. Va. Code § 36-99(A); *Weiss v. Cassidy Devel. Corp.*, 61 Va. Cir. 237 (2003); *Glass v. Trafalgar House Property, Inc.*, 58 Va. Cir. 437 (2002); *Moskowitz v. Renaissance*, 52 Va. Cir. 459 (2000). My review of the Building Code leads me to the same conclusion. I note that the sanctions for violations are criminal and civil penalties. Va. Code § 36-106. The General Assembly has amended that statute on many occasions, but it has never provided a private right of action.

I believe Hall has the correct interpretation of *Virginia Electric & Power Co. v. Savoy Const. Co.*, 224 Va. 36, 294 S.E.2d 811 (1982). There was no contractual relation between the parties in that case. The duty breached was not specifically stated, but it would appear from the facts to have been the common law duty of ordinary care. The Building Code was not applied to create a cause of action, but to supply the standard of care to be exercised by the contractor.

The plaintiff also alleges violations of "NFPA 72, The National Fire Alarm Code, FM 311, and UL 827." I must confess my complete ignorance about these provisions, whatever they may be. I sustain Hall's demurrer to this claim.

## Gross Negligence

The plaintiff alleges the defendants were grossly negligent in their delay in forwarding the alarm to the fire department, and, for purposes of this demurrer, I shall assume they were. I do not know if the plaintiff is suing in tort for gross negligence or in contract claiming that gross negligence defeats the limitation of damages clause; the motion for judgment suggests the former, but the plaintiff's brief the latter. In either case, I sustain the demurrer for three reasons.

First, here we have two commercial parties on equal footing who have contracted to limit liability. Such agreements are enforceable. *Chesapeake & O. Ry. v. Telephone Co.*, 216 Va. 858, 224 S.E.2d 317 (1976). Hall, so far as the pleadings disclose, is not a public utility, monopoly, or supplier of inherently dangerous products. It is not alleged that the plaintiff was compelled to contract with Hall or that it could not have received the same service from another company. The contract offered the plaintiff the choice of having Hall assume a greater liability, but the plaintiff apparently did not want to pay for that. I do not see anything in this transaction, as disclosed in the pleadings, that shocks the conscience.

*Fairfax Gas & Supply Co. v. Hadary*, 151 F.2d 939 (4th Cir. 1945), was a case in which the court would not enforce a damage limitation clause in a contract because of the defendant's gross negligence or wantonness. However, there are several distinctions. First, that case was decided before *Chesapeake & O. Ry., supra*. Second, the case involved the supply of an explosive substance. Third, the contract was between an individual consumer and a corporation. Fourth, the defendant supplier appears to have been a monopoly. 151 F.2d at 941. Fifth, the contract clause did not limit the defendant's damages; it exonerated the defendant from liability.

In *Gill v. Rollins Protective Services Co.*, 722 F.2d 55 (4th Cir. 1983), upon which the plaintiff relies, the question decided was the effect of the contractual limitation on a statutory cause of action; the breach of contract claim had "been taken out of the case along the way." There was no issue of gross negligence in the case, and the court upheld the contractual limitation with respect to the negligence claim. 722 F.2d at 58-59.

Second, absent the contract, Hall would have had no common law duty to the plaintiff to call the fire department; their relation arose *ex contractu*. Therefore the plaintiff may only sue Hall in contract, not in tort. *Richmond Metropolitan Auth. v. McDevitt Street Bovis, Inc.*, 256 Va. 553, 507 S.E.2d 344 (1998); *Foreign Mission Board v. Wade*, 242 Va. 234, 409 S.E.2d 144 (1991). The duty allegedly breached here is explicitly contained in the contract:

> *Contractor's Duty*: If Customer has chosen to subscribe with Contractor for central alarm monitoring, Contractor, upon receipt of an alarm signal from Customer's premises, shall make every reasonable effort to transmit the alarm promptly to the appropriate police, fire department, or other emergency service authority unless there is just cause to assume that an emergency condition does not exist.

To allow the gross negligence claim to proceed would undo the policy stated in *Richmond Metropolitan Authority* to "safeguard against turning every breach of contract into an actionable claim for [tort]." 256 Va. at 560, 507 S.E.2d at 348.

Third, it is easy to allege gross negligence, and, as it is ordinarily a question of fact, it is usually to be decided by a jury. Furthermore, motions for summary judgment and motions to strike the evidence in Virginia are viewed from above as "shortstopping" litigation and not favored. Thus, to allow an allegation of gross negligence to defeat a contract defense or support a tort claim between contracting parties "on equal footing" would undermine the reliance the parties justifiably place on their negotiated rights and obligations and expose them to liability they did not likely intend at the time they contracted. Even Mr. Falk stated this has "huge repercussions." Hearing Transcript, p. 29. If that policy is to be adopted in Virginia, it should be done by the General Assembly or the Supreme Court. There is, perhaps, no institution of government in Virginia more ill-suited to policy making than a circuit court judge. I sustain Hall's demurrer to this claim.

*The Claims against Vulcan and the Economic Loss Rule*

The plaintiff's three negligence claims are the only claims it asserts against Vulcan. At the hearing, the plaintiff relied on *Miller v. Quarles*, 242 Va. 343, 410 S.E.2d 639 (1991), to claim that an agent can be liable in tort for negligent performance of the principal's contract.

*Miller* appeared to be a case involving only economic loss and appeared to create a conundrum. The principal may not be sued in tort when the only duty it has to the plaintiff arises *ex contractu;* under *Miller* the agent who negligently breaches the contract may be sued in tort; under the common law of agency a principal is liable for the torts his agent commits within the scope of his employment. Thus the principal should be liable in tort for his agent's negligent breach of the contract.

*Moore v. Drewry*, 251 Va. 277, 467 S.E.2d 811 (1996), resolved the apparent conundrum. The agent is liable in tort when he breaches a common law duty. *Moore* held that the duty breached in *Miller* was the duty to exercise reasonable care in safeguarding specific property; the explicit holding was that *Miller* was a property damage case and the agent is not liable for negligent performance of a contract resulting in only economic loss. The *Moore* decision also cited *Allen Realty Corp. v. Holbert*, 227 Va. 441, 318 S.E.2d 592 (1984), as authority for an agent's liability for negligent performance of a contract to which he is not a party. In *Allen Realty*, the employee was alleged to have breached a fiduciary duty to the plaintiff, his employer's client. The plaintiff here has not pleaded a common law duty Vulcan owed it and breached so I sustain Vulcan's demurrers.

In this view of the case, I need not further address the economic loss rule.