12

# CIRCUIT COURT OF THE CITY OF LYNCHBURG

Robert E. Clarke et al.

v.

Michael J. Collins
and John Hancock Life Ins. Co.

October 4, 2006

Case No. CH4023695-01

BY JUDGE J. MICHAEL GAMBLE

I am writing to furnish you with the decision in this case. In this regard, I grant to Robert E. Clarke judgment against Michael J. Collins and John Hancock Life Insurance Company ("Hancock") in the sum of $139,474.36 on the grounds of breach of contract. I dismiss Clarke's complaint for constructive fraud. I do not grant the request for recovery of potential income taxes. I deny the request for attorney's fees. I do not grant prejudgment interest.

The essential facts in the case are mostly undisputed. Clarke is the retired president of Southern Air, Inc., in Lynchburg, Virginia. He was the owner of a Mass Mutual life insurance policy that had been purchased by Southern Air during his employment with the company. After his retirement,

Clarke was required to pay the annual premium of $8,229.00 on this policy. The life insurance policy did not perform well relative to the amount of the annual premium. In April 2003, it had a death benefit of $300,000.00, paid up additional insurance of $123,000.00, and a cash value of $198,71.00.

Clarke was a customer of the Wachovia Bank Wealth Management Program. Pursuant to a review, Wachovia recommended that Clarke make a tax-free 1035 exchange of the cash value of the Mass Mutual policy into an annuity that would pay $14,635.13 to purchase a second to die life insurance policy.

After consultation with a friend, Clarke decided not to follow the specific recommendations of Wachovia. He consulted with Buck Bradley, an insurance agent who had sold insurance to Southern Air. Bradley was a licensed insurance agent in the Commonwealth of Virginia. Since 2002, he had been an agent for Hancock. He worked through Collins, who was a general agent of Hancock.

Clarke consulted with Bradley and requested his recommendations. Bradley forwarded Clarke's information to Collins for his recommendation. On May 3, 2003, Collins faxed to Bradley his recommendations on the actions that Clarke should take. The Collins recommendations are set forth in Exhibit 1 of the Plaintiff's Trial Notebook.

Collins recommended that there be a 1035 exchange of the Mass Mutual policy and that the assumed $211,000.00 cash value fund a John Hancock annuity. According to Clarke, the annual income from the John Hancock annuity would be $25,218.72. The income from the Hancock annuity would be used to pay the $9,817.00 annual premiums on a life insurance policy for Clarke with a death benefit of $401,848.00 and the annual premium of $15,402.00 on a second to die Hancock Life Insurance policy on Clarke and his wife. Collins estimated that 70% of the income from the Hancock annuity would be tax free, causing the annual taxable amount to be $7,565.62.

In his 2003 recommendation to Bradley, Clarke stated that the 1035 exchange of the Mass Mutual policy to a Hancock annuity should be made "*after* an underwriting decision has been made by John Hancock" on the two Hancock life insurance policies.

After considering the Collins proposal for a few days, Clarke told Bradley to proceed to implement the recommendations. In July or August 2003, Hancock approved both the life insurance policy on Clarke and the second to die policy on Clarke and his wife. Clarke thereupon completed the application for the Hancock annuity in August 2003. However, at the suggestion of Bradley, he held the annuity application until January 2004 to allow the additional dividends in the Mass Mutual to increase to a cash value

of $211,000.00. In the interim, on the recommendation of Collins, Clarke withdrew from the Mass Mutual cash value sufficient funds to pay the first year premiums on the two Hancock policies. Therefore, on June 9, 2004, when the Mass Mutual 1035 exchange was completed, Hancock received $185,850.47 to fund the annuity. The monthly payout for the Hancock annuity was $1,221.04, and the annual payout was $14,652.48. This was $880.52 less than the monthly payout set forth in the Collins recommendations to Bradley, and it was $10,566.24 per year less than those recommendations.

Neither Clarke nor Bradley was aware that the annuity would pay less than represented until the annuity was issued on June 9, 2004. Complaints were promptly made to Collins and Hancock. When no action was taken, Clarke rejected the annuity. Pursuant to a temporary injunction issued by the court, the life insurance policies remain in effect but no premiums have been paid since the first annual premiums. Additionally, although John Hancock has not made any payments under the annuity, it has indicated that it is ready and willing to make these payments.

Clarke seeks to recover for the loss of his contractual bargain. All of the damages in this case flow from the agreement that was formed pursuant to the recommendations of Collins. Under the agreement formed pursuant to Collins' recommendations, the Mass Mutual policy would be cashed in to purchase a Hancock annuity that would fully pay the premiums on the two life insurance policies. All of the parties knew that the key to the implementation of this agreement was that the Hancock annuity would pay more than $25,000.00 per year to fund the premiums on these life insurance policies. Collins, Hancock's agent, clearly represented that the Hancock annuity would produce this income. Accordingly, Clarke, Bradley, and Collins, proceeded to implement the Collins proposal based upon the agreement that the Hancock annuity would produce more than $25,000.00 annual income to pay the life insurance premiums. In that endeavor, Clarke and his wife applied for the life insurance, were approved, and purchased the policies. Further, Clarke created an irrevocable life insurance trust through Wachovia Bank pursuant to the Collins recommendations. Accordingly, all of the parties were working towards a full implementation of the agreement based upon an assumed payout from the Hancock annuity.

The evidence in this case is undisputed that the annuity would not produce income in excess of $25,000.00 per year by the payment of $211,000.00. Both Collins and Hancock admitted that any representation that $211,000.00 paid into an annuity would produce $25,000.00 per year in income was erroneous. Thus, it is clear that Collins was wrong when he made his recommendation to Clarke through Bradley. Nonetheless, Hancock,

Collins, Bradley, and Clarke proceeded to implement the Collins plan even though the annuity quote was incorrect. This performance created the contract to furnish an annuity that would produce $25,000.00 or more per year to pay for the Hancock life insurance policies.

There was no written agreement between the parties. Therefore, an oral contract must be proved by clear and convincing evidence. *Dickerson v. Conklin*, 218 Va. 59, 65, 235 S.E.2d 450, 454 (1977). This was proven by the actions of the parties. A contract can be proven by a course of dealing and the conduct of the parties. *Reid v. Boyle*, 259 Va. 356, 370, 527 S.E.2d 137, 144 (2000). This is particularly true where there has been partial performance of a contract. *City of Manassas v. Board of County Supervisors*, 250 Va. 126, 134, 458 S.E.2d 568, 572 (1995).

In *High Knob v. Allen*, 205 Va. 503, 509, 138 S.E.2d 49, 54 (1964), the Supreme Court held that the trial court can determine the circumstances under which an agreement is made and whether partial performance has occurred. The plaintiffs in *High Knob* purchased real estate subject to a covenant that no wells could be drilled on the lots. However, the developer orally represented that it would furnish water through a water system for a $200.00 hook-on fee. *High Knob*, 205 Va. at 505, 130 S.E.2d at 51. The Supreme Court affirmed the trial court ruling that High Knob must furnish water pursuant to the oral agreement because, under the circumstances, it was implicit that High Knob would furnish water to the residential lots and because the agreement had been partially performed. *High Knob*, 205 Va. at 509, 138 S.E.2d at 54.

In the instant case, the parties proceeded on the agreement that the annuity purchased for $211,000.00 would produce more than $25,000.00 of income per year. The actions of the parties establish this agreement. The life insurance policies were purchased, the premiums paid, the trust established, and the funds paid into the annuity. There was partial performance by all parties. The fact that less than $211,000.00 was placed in the annuity is inconsequential. Clarke was never given the opportunity to pay the full $211,000.00, and the evidence is clear that, even if he had, the full income would not have been produced.

In a breach of contract action, the only losses recoverable are those suffered as a result of the breach of a contractual duty. *Sensenbrenner v. Rust, Orling & Neale Architects, Inc.*, 236 Va. 419, 425, 374 S.E.2d 55, 58 (1988). In an insurance contract case, the proper measure of damages is the difference between the policy bargained for and the one actually received. *Filak v. George*, 267 Va. 612, 619, 594 S.E.2d 610, 614 (2004). In the instant case, Clarke was promised an annual income of $25,218.72 a year. The actual

amount turned out to be $14,652.48. This leaves a net reduction of $10,566.24. At the time that the annuity was issued, Mr. Clarke was 68 years of age. His life expectancy under Va. Code § 8.01-419 was 13.2 years. Therefore, when his annual deficiency of $10,566.24 is multiplied by 13.2 years, his damages are $139,474.36.

The plaintiffs seek specific performance of the contract in addition to an amount of damages. In order to receive an affirmative injunction of specific performance, the plaintiffs must establish that they do not have an adequate remedy at law. *Wright v. Castles*, 232 Va. 218, 224, 349 S.E.2d 125, 129 (1986). In the instant case, the plaintiffs have an adequate remedy to recover his loss of bargain by the difference between what he received and what he should have received during the period of his life expectancy. Accordingly, no affirmative injunctive relief can be granted in this case.

Under Va. Code § 38.2-1800 the word "Agent" "means an individual . . . . that solicits, negotiates, procures, or effects contracts of insurance or annuity in this Commonwealth." Under the evidence in this case, both Collins and Bradley were agents of Hancock. Further, the evidence establishes that they were soliciting, negotiating, and procuring contracts of insurance and annuity on behalf of Hancock in the Commonwealth of Virginia. This is clearly indicated by the fact that Collins and Bradley procured two Hancock insurance policies and an annuity for Clarke. Further, they were paid commissions for these insurance and annuity contracts. When an agent acts within the scope of his authority, the principal becomes the contracting party. *Equitable Variable Life Ins. v. Wood*, 234 Va. 535, 539, 362 S.E.2d 741, 743-44 (1987); *Marshall, Erdman & Assocs. v. Loehr*, 24 Va. App. 670, 678, 485 S.E.2d 145, 149 (1997). Further, an agent such as Collins is liable when he fails to procure the insurance policy he promised to procure. *Filak v. George*, 267 Va. 612, 618, 594 S.E.2d 610, 613 (2004).

Collins argues that there was a mutual mistake of fact that voids the contract to furnish an annuity. Citing *Briggs v. Watkins*, 112 Va. 14, 70 S.E. 551 (1911), Collins notes that Virginia courts will void a contract where there has been a mutual mistake of fact. This argument is not applicable in this case, because only the defendants made the mistake. In order to be a mutual mistake, both parties must make the mistake. The mistake must be "common" to both parties. *Briggs*, 112 Va. at 25, 70 S.E. at 554. In the instant case, Collins made the mistake. It is through the mistake of Collins that the correct annuity contract was not procured. Clarke was willing to perform in accordance with the contract that Collins indicated that he would procure. Clarke made no mistake.

Both defendants argue that the statute of frauds prevents the enforcement of the annuity contract. This argument fails on two grounds. First, an oral contract is enforceable notwithstanding the statute of frauds when there has been partial performance. *Runion v. Helvestine*, 256 Va. 1, 6, 501 S.E.2d 411, 414 (1998). In this case, Clarke partially performed when he cashed in his Mass Mutual policy, prepared the irrevocable trust, and purchased the life insurance policies. Next, Va. Code § 11-2 provides that the statute of frauds is not applicable to a contract if the party to be charged or his agent has signed some written memorandum or note. In this case, Collins signed the e-mail set forth in Exhibit 1, and Bradley signed the letter indicating that Clarke accepted the proposal (Exhibit 10). These writings satisfy the memorandum requirement of the statute of frauds.

Clarke seeks as part of his damages a recovery of the income taxes he believes that he would pay on the judgment. There has been no appellate case in Virginia wherein a tax gross-up has been granted as an element of damages. The cases that have addressed this issue have held that taxes cannot be considered as part of a damage recovery. *Hoge, Adm'r v. Anderson*, 200 Va. 364, 367, 106 S.E.2d 121, 123 (1958); *Norfolk Southern Ry. v. Rayburn*, 213 Va. 812, 817, 195 S.E.2d 860, 865 (1973).

In *Rutter v. Jones, Blechman, Woltz & Kelly*, 264 Va. 310, 314, 568 S.E.2d 693, 695 (2002), the court considered a malpractice action wherein an estate had additional tax liability resulting from legal advice given to the decedent during his life. In that case, the plaintiff executor was seeking damages for the additional tax assessment together with the additional accounting and legal fees. The Supreme Court of Virginia, however, held that damages could not be recovered because they accrued after the death of the decedent. Accordingly, any discussion of tax damages in *Rutter* is not applicable to this case because it was dismissed on other grounds.

Further, any recovery of taxes is simply too speculative. The evidence in this case is insufficient to calculate any tax liability. There is not sufficient evidence of the income level, marginal tax rate, deductions, and tax laws in effect when the judgment payment is made to accurately give a reasonable estimate of the actual taxes that Clarke would pay on any recovery. This is different than the taxes discussed in *Rutter, supra*, where there was a specific tax assessment resulting from the erroneous legal advice.

Also, the recovery of income taxes in this case would be a consequential damage as opposed to a direct damage. The direct damage is the actual loss of annuity income. Consequential damages would be those damages that were in the contemplation of the parties. *Morris v. Mosby*, 227 Va. 517, 525, 317 S.E.2d 493, 497 (1984). The court cannot find that, in this

case, it was contemplated by the parties that there would be additional income tax liability resulting from damages recovered for a breach of contract. The parties in this case simply contemplated that an annuity would pay sufficient income to pay the premiums on the two life insurance policies.

Clarke seeks a recovery on the tort grounds of constructive fraud in addition to his breach of contract claim. There can be no recovery in tort for losses that result from breach of contract. Contract damages are only recoverable if they were within the contemplation of the parties when they made their agreement. *Sensenbrenner*, 236 Va. at 425, 374 S.E.2d at 58. In *Filak*, 267 Va. at 618-19, 594 S.E.2d at 613, the Supreme Court rejected a constructive fraud claim against an insurance agent who failed to procure a certain kind of casualty insurance policy. The court held that the losses suffered by the plaintiffs were purely economic in nature arising from their oral contract with the insurance agent. Likewise, the damages in this case arise from the contractual agreement to procure a certain return on an annuity. Just as in *Filak*, the damages are economic damages from the breach of contract. Therefore, the tort action for constructive fraud is dismissed.

Clarke cites *Ware v. Scott*, 220 Va. 317, 257 S.E.2d 855 (1979), and *Miller v. Quarles*, 242 Va. 343, 410 S.E.2d 639 (1991), for the proposition that more than economic loss is involved in the instant case. *Ware* and *Miller*, however, are different. In each case, there was a direct loss of property. A deposit was lost in *Miller* and damage to property occurred in *Ware*. As noted in *Sensenbrenner*, the controlling policy in tort law is the protection of persons and property from losses resulting from injury. *Sensenbrenner*, 236 Va. at 425, 374 S.E.2d at 58. The instant case does not involve loss of property as in *Ware* and *Miller*. It involves the recovery of economic damages arising from contract.

Clarke seeks a recovery of attorney's fees. The general rule in Virginia is that in the absence of a statute or contract, a court may not award attorney's fees to a prevailing party. *Gilmore v. Basic Industries, Inc.*, 233 Va. 485, 490, 357 S.E.2d 514, 517 (1987). In the instant case, there is neither a statute nor a contract that authorizes the award of attorney's fees.

An award of attorney's fees is also possible under certain circumstances in fraud cases. *Prospect Development Co. v. Bershader*, 258 Va. 75, 515 S.E.2d 291 (1999). All fraud claims in this case have been dismissed. Therefore, attorney's fees cannot be awarded based upon the rationale in *Prospect Development*.

The plaintiffs seek prejudgment interest. This is denied. The plain language of Va. Code § 8.01-382 gives the court discretionary authority to grant prejudgment interest. *Tauber v. Commonwealth*, 263 Va. 520, 544, 562

S.E.2d 118, 131 (2002). Prejudgment interest is not awarded because most of the monthly payments under the annuity will be due in the future. Thus, most of the plaintiffs' future loss of income from the annuity will occur in the future rather than in the past. Additionally, the judgment granted in this case has not been reduced to present value. (No authority has been found that requires a judgment to be reduced to present value, especially when no evidence of present value has been presented.) Therefore, because the plaintiffs are receiving a future value at the present time, the award of prejudgment interest would be unfair to the defendants.

The decision in this case is made on the assumption that Hancock has maintained the two life insurance policies in force, that Hancock will make all past due payments under the annuity, and that Hancock will make all future payments required by the annuity contract.